## LAFKOWITZ et ux. v. JACKSON.

(Circuit Court of Appeals, Eighth Circuit. May 10, 1926. Rehearing Denied June 19, 1926.)

No. 7140.

1. **Bankruptcy** ⟁⟀303(3)—Evidence held to show that money used for purchase of business by bankrupt after bankruptcy was money hid away for such purpose and belonged to trustee (Bankr. Act, § 70 [Comp. St. § 9654]).

Evidence held to show that money used by bankrupt for purchase of business after having been adjudged bankrupt was money which he had hid away for such purpose, and which, under Bankr. Act, § 70 (Comp. St. § 9654), belonged to trustee.

2. **Trusts** ⟁⟀76.

Bankrupt's wife, taking title to property with knowledge that funds used for purchase belonged to bankrupt estate, took title in trust for trustee in bankruptcy.

3. **Bankruptcy** ⟁⟀305.

Order directing marshal to turn over to trustee in bankruptcy amount arising from sale on attachment of stock purchased by bankrupt with money belonging to bankrupt estate held proper, in trustee's suit to establish

his right to the stock of goods, or recover judgment for amount paid therefor.

4. **Bankruptcy ⬯287(1), 467—Attachment in suit by trustee to establish right to goods purchased with funds belonging to bankrupt estate held erroneously sustained, but error held not prejudicial, where evidence showed that goods in reality were property of trustee (Rev. St. §§ 914, 915, 933 [Comp. St. §§ 1537, 1539, 1559]).**

Under Rev. St. §§ 914, 915 (Comp. St. §§ 1537, 1539), and in view of section 933 (Comp. St. § 1559), it was error to sustain attachment proceedings in trustee's suit in equity to establish right to property purchased by bankrupt with funds belonging to bankrupt estate; but error was without prejudice, where evidence showed that goods were in reality property of trustee.

Appeal from the District Court of the United States for the Eastern District of Missouri; Charles B. Faris, Judge.

Suit by Robert E. Jackson against M. Lafkowitz and wife. Decree for plaintiff, and defendants appeal. Modified and affirmed.

Von Mayes, of Caruthersville, Mo., and Charles Clark, of Cleveland, Miss., for appellants.

Robert N. Somerville, of Cleveland, Miss. (A. D. Somerville, of Cleveland, Miss., and Robert B. Oliver, Robert B. Oliver, Jr., and Allen L. Oliver, all of Cape Girardeau, Mo., on the brief), for appellee.

Before SANBORN and LEWIS, Circuit Judges, and PHILLIPS, District Judge.

LEWIS, Circuit Judge. When this case was filed on May 22, 1924, in the court below, it was put on the law docket. It was brought by Robert E. Jackson, as trustee of M. Lafkowitz, bankrupt, against M. Lafkowitz. At the same time a writ of attachment was sued out in aid. The complaint alleges that M. Lafkowitz (whose first name is Meyer) was adjudged bankrupt on February 18, 1924, in the United States Bankruptcy Court for the Northern District of the State of Mississippi, and plaintiff was elected trustee on April 4th following, that in March, 1924, defendant became a citizen and resident of Caruthersville, in the State of Missouri, and in that month purchased a stock of provisions and groceries there with moneys that belonged to the bankrupt estate, which had been concealed by the bankrupt and his wife, Dora, and withheld from the trustee, that he paid $4,190.11 for said stock of goods with moneys so concealed; and it was prayed that the court adjudge plaintiff entitled to said stock of goods or that he have judgment for the amount paid therefor, and for any other order that may seem right, just and equitable. On May 22d summons was served on the defendant and on the same day the writ of attachment was levied on the stock. On May 24th application was made to the court to sell the stock under the attachment levy because some of it was perishable and all of it would deteriorate in value if not disposed of. The order applied for was granted, the sale was advertised for June 6th and on that day the Marshal, after having made an inventory, disposed of the whole stock at public sale to A. Lafkowitz, of Columbus, Georgia, he being the highest bidder, and reported to the court that after paying certain named expenses incident to the levy, custody and sale he had in hand the sum of $1,828.25, in which was included small amounts paid on writs of garnishment. The defendant did not enter his appearance in the cause until June 11th, after the Marshal's sale, when he filed a motion to dissolve the attachment and quash the writ on the ground that it had issued without authority of law, for the reason that the action was a suit in equity and attachment would not lie therein. He filed his answer to the complaint on October 17, 1924. It was a general denial. On June 23, 1924, his wife, Dora Lafkowitz, petitioned to intervene as a defendant, which was sustained, and on October 17, 1924, she filed her answer, denying all of the allegations in the complaint, and alleged that she was the true and lawful owner of the stock, that she purchased it with her own separate means and money and that her husband had no right, title or interest, legal or equitable, therein, and she prayed for appropriate relief. On oral motion of both defendants the court, on October 17th, entered an order that the cause be transferred from the law to the equity side of the court. The cause came on for trial as a suit in equity, and the testimony was taken in open court.

[1] From the uncontradicted proof it appears that Lafkowitz and his wife went to Caruthersville in March, 1924, that during that month he negotiated with Herman Frederick, then owner of the stock of goods, for its purchase, that during that month a written contract was entered into between Frederick and D. Lafkowitz for the sale and purchase of the stock at a consideration of $4,190.11. Frederick testified that after the contract was executed he asked M. Lafkowitz when he would make payment, and Laf-

kowitz replied that he had sold his father some bonds and was waiting for the money. Lafkowitz denied making this statement. About March 20, 1924, Lafkowitz or he and his wife together, went to the bank at Caruthersville and deposited therein to the credit of D. Lafkowitz $1,000 in currency, consisting of ten $100 bills, and a check on the First National Bank of Columbus, Ga., for $3,000, payable to the order of Dora Lafkowitz, given by A. Lafkowitz. This deposit was used in payment for the stock of goods. Lafkowitz then took possession of the stock and thereafter, in the transaction of business with the bank, the account was continued in the name of D. Lafkowitz. The president of the bank testified that in the beginning of transactions with the bank he asked Lafkowitz his name and that the latter gave his name as Dave, and that he thereafter called him Dave. This Lafkowitz denied. He insisted that the stock was purchased by his wife with her money and belonged to her, that he acted for her, and that the account with the bank in the name of D. Lafkowitz was the account of Dora Lafkowitz. She testified that the thousand dollars in currency was an accumulation of earnings that she had made by her own efforts when she and her husband resided in Mississippi, and that she borrowed the $3,000 from A. Lafkowitz, father of her husband. A. Lafkowitz was a tailor residing at Columbus, Ga., where he had lived for several years. He had been adjudged bankrupt in 1922 and obtained his discharge in June, 1923. He had also gone through bankruptcy some seven or eight years before 1922. A copy of his account with the First National Bank at Columbus, Ga., is in the record. On March 14, 1924, he made a deposit of $3,040. His other deposits prior and subsequent to that date, covering eighteen months, were very small in comparison. The defendant visited his father at Columbus in December, 1923, and also a few days before the $3,000 check was sent to Dora Lafkowitz. Since A. Lafkowitz purchased the stock on June 6th it has been carried on in his name, the business thereafter being conducted by the two defendants. Witnesses who resided in Mississippi and were well acquainted with Lafkowitz and his wife when he was in business there testified to facts and circumstances in connection with his failure there as a merchant. It would protract this discussion to an unreasonable length to recite their testimony and indicate the bearing it had on the main inquiry. It gave support to the claim that M. Lafko-

witz did not account to the Bankruptcy Court in Mississippi for all of his assets; and it was testified that he and his wife, prior to his failure, expressed intention not to do so. The trial judge who saw the witnesses and heard them testify stated in a brief memorandum the facts as he found them and gave the reasons for his conclusions. He thought "all the circumstances in the case contradict the direct evidence of the bankrupt and of the bankrupt's father. * * * On the whole (the judge said) I am convinced that this money that was used to buy that business was the money of the bankrupt which he hid away for that purpose." A careful reading of the record brings us to a like conclusion. Of course, Lafkowitz had been divested of title to or any interest in the money used to make the purchase. It belonged to Jackson as trustee. Bankruptcy Act, § 70 (Comp. St. § 9654).

[2] Accepting the contention of the defendants that the legal title to the stock of goods was taken in the name of the wife, it is quite apparent that she knew the source from which the funds came that were used to make the purchase. She stayed in the store with her husband and helped him when he was in business in Mississippi for several years, and after they came to Caruthersville she was active in assisting to conduct the business there. She was with him on some of the occasions on which he was negotiating for purchase of the stock there, went to the bank with him when the $4,000 deposit was made, and was in the bank on other occasions transacting business with it. It seems impossible for her not to have known that the funds used belonged to the plaintiff trustee. She therefore took title to the stock of goods in trust for him. In equity he was the real beneficial owner. 2 Pomeroy's Eq. Jur. (3d Ed.) § 1031, in discussing resulting trusts states:

"Resulting trusts, therefore, are those which arise where the legal estate in property is disposed of, conveyed, or transferred, but the intent appears or is inferred from the terms of the disposition, or from the accompanying facts and circumstances, that the beneficial interest is not to go or be enjoyed with the legal title. In such case a trust is implied or results in favor of the person for whom the equitable interest is assumed to have been intended, and whom equity deems to be the real owner. This person is the one from whom the consideration actually comes, or who represents or is identified in right with the consideration; the

resulting trust follows or goes with the real consideration."

And again, at section 981:

"Equity first introduced the principle that in all the transactions of men concerning land—their transfers and bargains—the consideration is the essential fact which determines the real beneficial ownership, wherever the legal title may be vested. The consideration draws to it the equitable right of property; the person from whom the consideration actually comes, under whatever form or appearance, is the true and beneficial owner. This grand principle extends not only to dealings which are intentional and rightful, but to those which are fraudulent, or in any manner wrongful or unconscientious. When once introduced, it was easily carried through all those branches of equity jurisprudence which relate to property, real or personal, and it underlies all the modern doctrines of resulting and constructive trusts, and all the remedies by which the beneficial owner is enabled to follow his equitable property in the hands of third persons."

Chief Justice Gibson, in considering resulting trusts in Kisler v. Kisler, 2 Watts (Pa.) 323, 27 Am. Dec. 308, said:

"The trust is still considered to arise from the ownership of the purchase money. That it has been raised on no other foundation, shows this ownership to be the efficient cause."

In Beck v. Uhrich, 13 Pa. 636, 53 Am. Dec. 507, it is said:

"If one man buy land with the money of another man, even though he stand in no fiduciary character to the person whose money has been used, and takes the legal title in his own name, there is a resulting trust, and the legal title is a mere naked form, and only evidence of title in favor of the cestui que trust, because his money paid for it."

In Shaw v. Shaw, 86 Mo. 594, Sherwood, J., in speaking for the court said:

"But the main point, the controlling question in inquiries of this nature is the ownership of the purchase money. If such ownership be established by parol in such manner as to leave no room for reasonable doubt in the mind of the chancellor, the resulting trust springs into being by implication of law, and follows the ownership of the money."

And later, Valliant, J., for the same court, said in Stevens v. Fitzpatrick, 218 Mo. 708, 118 S. W. 51:

"Resulting trusts are those which arise from the acts of the parties by operation of law. The party to be charged as trustee may never have agreed to the trust, and may have really intended to resist it; yet if his acts have been such as are in honesty and fair dealing consistent only with the purpose to hold the property in trust, a trust will result by operation of law. * * * There are other conditions than the one just suggested where a trust will result by operation of law, one of which is where a person entrusted with money of another buys property and takes title in his own name."

The dominant and controlling purpose of the complaint was to confirm the equitable estate in the trustee and possess and dispose of it in the bankruptcy proceedings, which Pomeroy assigns to exclusive equity jurisdiction—section 147:

"An equitable estate, in its very conception, and as a fact, requires the simultaneous existence of two estates or ownerships in the same subject-matter, whether that be real or personal—the one legal, vested in one person, and recognized only by courts of law; the second equitable, vested in another person, and recognized only by courts of equity."

[3, 4] The court made its order of October 17th, transferring the case from the law to the equity docket, in recognition of this principle. The decree directed the Marshal to turn over to complainant-trustee the net amount in his hands arising from sale of the stock; which we think was a proper order. The decree also sustained the attachment proceedings. This we think was error, but error without prejudice. Attachment is a legal or statutory proceeding and remedy. It is not recognized as an appropriate or permissible means to aid in the ascertainment and settlement of equitable rights. 6 C. J. 32. The conformity statute (R. S. § 914 [Comp. St. § 1537]) excludes equity causes; section 915, R. S. (Comp. St. § 1539), grants to the plaintiff, in common-law causes only, in the district courts similar remedies, by attachment or other process, against the property of the defendant which are now provided by the laws of the State in which such court is held for the courts thereof. We believe there has been no attempt by Congress to authorize by statute the issuance of a writ of attachment out of a court of chancery. The Missouri statute gives the plaintiff in any civil action the right, on conditions named, to have an attachment against the property of the defendant, but it does not appear that the statute has been construed to apply to suits in

equity in the State court. The rulings of the Supreme Court of that State, so far as we are advised, seem to restrict the right to law actions. Gage v. Gates, 62 Mo. 412; Lackland v. Garesche, 56 Mo. 267. R. S. § 933 (Comp. St. § 1559), provides:

"An attachment of property, upon process instituted in any court of the United States, to satisfy such judgment as may be recovered by the plaintiff therein * * * shall be dissolved when any contingency occurs by which, according to the laws of the State where said court is held, such attachment would be dissolved upon like process instituted in the courts of said State."

We do not mean to say that a State statute could confer the right on a Federal court to issue the writ in an equity suit instituted in that court. Moreover, the writ of attachment issued in this case was not levied on property of either defendant. The complaint alleged and the proof established that the stock of goods was in reality property of the trustee of M. Lafkowitz, bankrupt. The attachment proceedings, therefore, are not a subject of complaint by either defendant. They were not prejudiced thereby. We think the decree, in sustaining the attachment, was a technical error and we direct that the clause sustaining it be stricken out and the decree thus modified. The assignments raise no objections which have not been covered by the consideration already given to the case; and the decree as modified will be affirmed.