PEYCKE BROS. COMMISSION COMPANY, Plaintiff,
    Respondent v. SANDSTONE CO-OPERATIVE
    COMPANY, Defendant; GREAT NORTHERN
    RAILWAY COMPANY, Garnishee, Appellant.

Kansas City Court of Appeals, February 12, 1917.

1. **GARNISHMENT: Damages: Unliquidated Claim: Liability of Garnishee.** The liability of a garnishee must originate in and be dependent upon contract in order to authorize the proceeding, and the claim sought to be asserted by the plaintiff against the defendant creditor must be liquidated. Hence an unliquidated claim for damages on contract or in tort cannot furnish the basis for the garnishment of one owing a debt to a defendant in such claim.

2. ———: ———: ———: ———: **Carriers: Liability of Initial Carrier under Interstate Commerce Act.** Under the provisions of the Carmack Amendment to the Interstate Commerce Act, the delivery of a car in an interstate shipment to the consignee without surrender of the bill of lading renders the initial carrier liable either in tort for conversion or in contract for breach of the contract of carriage. But, where the shipper has not chosen what it will do or which right it will exercise, the consignee cannot exercise that right for the shipper, and, in a suit against the shipper, garnishee the initial carrier as a debtor of the shipper because of its liability to such initial carrier.

3. ———: **Truth of Garnishee's Answer: Burden of Proof.** The burden is on plaintiff, in an action wherein a third party is garnished, to prove that the answer of the garnishee is not true.

4. **TRIAL: Witnesses: Effect of Calling: Stipulation as to Testimony.** A party who puts a witness on the stand vouches for his testimony, which cannot be contradicted, or any lack therein supplied, merely by introducing a stipulation concerning what, on a former occasion, and at an entirely different trial, it was thought the witness' testimony would be.

Appeal from Jackson Circuit Court.—*Hon. C. W. German*, Special Judge.

REVERSED.

*Warner, Dean, McLeod & Langworthy* and *James P. Kem* for appellant.

*Edwin S. McCrary* for respondent.

195 M. A.—27

TRIMBLE, J.—The appeal herein involves the validity of a garnishment obtained in a justice court. In the case of Peycke Brothers Commission Company v. Sandstone Co-operative Company, the justice, on January 24, 1914, rendered judgment in favor of plaintiff for $326.30, and said judgment became final. Notice of garnishment was served upon the garnishee May 9, 1914. The garnishee denied that it had in its possession or under its control any property of the Sandstone Co-operative Company or was indebted to it in any way. This issue was tried before the justice on June 16, 1914, resulting in a judgment against the garnishee for $267.66. Appeal was taken to the circuit court where the matter was tried anew and judgment was again rendered against the garnishee for said amount, and it has brought the case here.

The contention of garnishee is that the evidence discloses no debt, subject to garnishment, owed by the garnishee to the Sandstone Co-operative Company. If this is true, the other points made concerning the admissibility of certain parts of plaintiff's evidence need not be considered. Passing then, the question whether plaintiff's evidence is admissible in its entirety, the facts upon which the garnishment rests may be stated thus:

The Sandstone Co-operative Company, located at Brookport, Minnesota, shipped a carload of cabbage from that point to Kansas City. The Great Northern Railway Company was the initial carrier and the shipment was upon a bill of lading to shipper's order with directions to the carrier to notify Peycke Brothers Commission Company at Kansas City. The bill of lading, with a draft for $267.66 attached, was sent to a Kansas City Bank. The Chicago Burlington & Quincy Railway Company was the terminal carrier and it had an arrangement with Peycke Brothers Commission Company whereby, under a bond given to indemnify the carrier, the latter would deliver shipments to the Commission Company as they arrived without demanding the bill of lading. When the carload of cabbage arrived, the Burlington delivered it to the Commission Company who unloaded and disposed

of it. In the meantime, however, the Commission Company, claiming that other cars shipped to them by the Sandstone Company shortly before or about the time of the shipment of the car now in question were not as represented, brought suit and obtained the judgment for $326.30 hereinbefore mentioned. The Commission Company, after obtaining the car now in question from the Burlington Railway, did not pay the draft and obtain the bill of lading from the bank, and made no effort to do so for some time after the delivery of the car.

In the meantime, the Sandstone Company recalled the draft and bill of lading, and the same never reached the Commission Company, and, the shipment being to shipper's order, the title to the shipment never passed. The delivery of the car by the Burlington, without requiring the bill of lading to be surrendered, was unauthorized, and upon demand by the Burlington for payment to cover invoice price of the car, Peycke Brothers Commission Company paid to the Burlington agent $267.66 on April 27, 1914. As stated, notice of garnishment was served upon the Great Northern Railway Company May 9, 1914. Plaintiff claims, however, that, there is evidence tending to show that the Burlington agent collected said money for the Great Northern and was holding it for that railway company at the time of service of notice of garnishment and at the time of the trial in the justice court, to-wit, June 16, 1914. (We will notice this claim as to the evidence later.)

The burden is upon the plaintiff to prove the answer of the garnishee is not true. [Davis, Garnishee v. Knapp, 8 Mo. 457.] The question then is, does the evidence disclose any debt due from the Great Northern Railway Company to the Sandstone Co-operative Company which is subject to garnishment under the rules of law applicable thereto?

The delivery of the car by the terminal carrier, the Burlington, was unauthorized, and this, under the interstate Commerce Act, rendered the initial carrier, the Great Northern, liable either in tort for the conversion of the car of cabbage or on contract for breach of the

420       195 MISSOURI APPEAL REPORTS.

Peycke Bros. Com. Co. v. Sandstone Co-operative Co.

contract of carriage. In neither case would the damages be liquidated, and an unliquidated claim connot be reached by garnishment. [Eddy v. Heath's Garnishee's, 31 Mo. 411; Ransom v. Hays Garnishee, 39 Mo. 445; Waples-Platter Grocery Co. v. Texas, etc., R. Co., 95 Tex. 486; Keys v. Milwaukee & St. Paul R. Co., 25 Wis. 691; Kidder v. Page, 48 N. H. 380; Selhemier v. Elder, 98 Pa. St. 154.] The liability of a garnishee to a defendant debtor must originate in and be dependent upon a contract in order to authorize the proceeding; a claim for unliquidated damages or a right of action for a tort is not the subject of garnishment. [Cunningham v. Baker, 104 Ala. 160.] It may be, the Sandstone Company, if it chose, could have treated the Great Northern as having violated its contract of carriage and could have regarded said carrier as its debtor to the extent only of $267.66 the price it fixed on the cabbage when they were shipped; or, if it chose, it could have authorized the Great Northern as its agent to collect said price of the cabbage from the party who obtained possession of the car and disposed of it. And if there were any evidence reasonably tending to show that it had done either of these things, then the question of whether the garnishment herein was valid would present a different aspect. But unless there is evidence tending to show that the Sandstone Company did choose to so regard and treat the Great Northern, we do not see how plaintiff can uphold its garnishment. For, the plaintiff cannot exercise the right of choosing for the Sandstone Company what it will do or which cause of action it will rely upon in reference to the Great Northern. The measure of damages for conversion would doubtless be the value of the goods at point of destination; while if the Sandstone Company's claim was merely for money had and received, or if the latter had, after the unauthorized delivery of the car, empowered the company as its agent to collect its price, then the measure would be the amount collected. The plaintiff cannot exercise this right of choice for the Sandstone Company. [Lewis v. Dubosa, 29 Ala. 219; Johnson v. Lamping, 24 Cal. 293; Mayberry v. Morris, 62 Ala. 113 116.]

Now, there is no evidence whatever tending to show that the Sandstone Company had authorized the Great Northern or the Burlington agent to collect the price of the car, without the bill of lading, or after the bill of lading and draft had been recalled; or that said company had elected to treat the initial carrier as a contractual debtor owing a fixed and definite sum for the unauthorized delivery of said car. Plaintiff put upon the stand as its witness the local agent of the Burlington, to whom it paid the $267.66, and tried to show that said sum was collected for the Great Northern, presumably at the request of the Sandstone Company. But said agent testified that he collected it solely to save himself or his company from liability for having delivered the car without obtaining the bill of lading, and that he had no authority from the Sandstone Company to do so. And there is no evidence tending to show any such authority. The letter written by the agent to plaintiff demanding the $267.66 afterwards paid to him does not say he was collecting it as agent for the Sandstone Company, even if his mere declaration as to his authority could be held binding upon the Sandstone Company.

When the testimony of this agent failed to support plaintiff's theory, plaintiff introduced, over garnishee's objection, a stipulation of the attorneys, filed in the justice court at the trial of the garnishment proceeding, as to what the agent's testimony would be if he were then present. Without regard to whether this stipulation was admissible at the trial in the circuit court, it says nothing about collecting said money as agent for the Sandstone Company. The evidence, therefore, clearly failed to show any authority or ratification on the part of the Sandstone Company of the collection of said amount by the Burlington agent.

Besides, we think this stipulation shows on its face that it was for use only at the trial in the justice court. It was not an agreed statement of facts, but only an agreement that the agent would, if present, testify that he collected the money for the Great Northern and still held it for the Company. But at the trial in the circuit

court the agent was personally present and the plaintiff put him on the stand thereby vouching for the integrity of his testimony. The fact that his testimony was different from that expected from him could not be obviated, nor could his testimony be contradicted or plaintiff's lack of testimony be supplied, merely by introducing a stipulation concerning what, on a former occasion and at an entirely different trial, it was thought the agent's testimony would be. But whether the stipulation was admissible or not, it utterly failed to show that the Burlington agent was acting for the Sandstone Company. It is said in the brief that he "assumed to act," but the mere fact that he, assumed to act for the Sandstone Company, but without authority, would not be sufficient to justify the sustaining of the garnishment. Even if the Burlington agent was acting for the Great Northern in collecting the $267.66, still the garnishee could not by its own acts affect its liability to the Sandstone Company without the latter's consent. [Scales v. Southern Hotel Co., 37 Mo. 520, 525.]

Authorities relating to cases of equitable garnishment can have no application here, since the case originated in a court having no equitable jurisdiction. Consequently, the garnishment cannot be sustained on the theory that the garnishee may be treated as a trustee holding funds which in good conscience belong to the Sandstone Company. Besides, to treat the garnishee as a trustee of the Sandstone Company, without the latter's consent, is to violate the rule hereinabove announced.

The judgment is reversed. All concur.