## GERMAN v. UNIVERSAL OIL PRODUCTS CO. (SKELLY OIL CO., Garnishee).

### REED v. SAME.

### Nos. 1714, 1715.

District Court, W. D. Missouri, W. D.
Jan. 24, 1934.

Cyrus Crane (of Lathrop, Crane, Reynolds, Sawyer & Mersereau), of Kansas City, Mo., for plaintiffs.

R. R. Brewster, of Kansas City, Mo., and Charles H. Mayer, of St. Joseph, Mo., for defendant.

OTIS, District Judge.

Each of these cases was filed in the circuit court of Jackson county, Mo., May 20, 1931. In neither of them was personal service had upon defendant. Writs of attachment were issued under which the Skelly Oil Company was summoned as garnishee. Thereafter the cases were removed to this court where the defendant has moved to quash the garnishments and to dismiss the cases. These motions are the subject-matter of this memorandum. Since the questions raised by the motions are essentially identical in the two cases, only the first, No. 1714, specifically will be discussed. What is said with reference to it equally is applicable to case No. 1715.

1. I consider first whether the state court had jurisdiction to issue the writ of attachment upon which the summons in garnishment was based. Whether it did have such jurisdiction depends upon the Missouri statutes governing attachments and garnishments. as construed by the Missouri courts. That those courts have so construed the statutes as to restrict the jurisdiction of courts to issue writs of attachment and garnishment to actions at law only is settled by the decisions [Lafkowitz v. Jackson (8 C. C. A.) 13 F. (2d) 370; State ex rel. v. Blair, 238 Mo. 132, 142 S. W. 326; Lackland v. Garesche, 56 Mo. 267; Beyer v. Trust Co. et al., 63 Mo. App. 521; Brumback v. Weinstein et al., 37 Mo. App. 520; Bachman v. Lewis et al., 27 Mo. App. 81; Atwood v. Hale et al., 17 Mo. App. 81] and admitted by plaintiff's learned counsel who, in his brief, thus states the rule: "The statutory process of garnishment, particularly where based upon a writ of attachment, being a purely legal process, cannot issue in aid of a suit which is fundamentally a suit in equity." The question then is, Does plaintiff's petition state a cause or causes of action at law or in equity?

The petition is in two counts. That the first of these states a cause of action in equity and not at law seems plain to me. Very obviously the pleader intended it to be an equitable proceeding. He affixed to it all the usual labels of a case in equity. He prays for an accounting as between joint adventurers of whom he is one, for a decree adjudging to the plaintiff such an amount from the fruits of the joint adventure "as will be equitable and right in the premises," and he asks "that a subpœna in chancery issue" commanding the defendant to appear and answer.

But more must be examined than the labels affixed to a package if the true nature of its contents is to be ascertained. So we must look into count 1 to discover what really it is. That will more easily be done if its essential allegations are concentrated, omitting mere details and elaboration, but retaining, so far as possible, the very language of the petition. We have:

"Plaintiff * * * states that * * *

defendant represented to plaintiff * * * that defendant was the owner (of a certain valuable patent). * * * That if the validity and priority of said patent could be established * * * (it) would be controlling and basic (in the gasoline producing industry). * * * That * * * the Standard Oil Company * * * was * * * infringing the said patent. * * * That the value of the said patent and the rights of the defendant could only be established and proof of their infringement be obtained by the exercise of great skill and the expedition of much time, labor and care. (That the accomplishment of such ends would bring to the defendant from the Standard Oil Company and others millions of dollars). * * *

" * * * That J. Ogden Armour, C. P. Dubbs, Frank L. Belknap, A. F. Reichmann, H. J. Halle and R. J. Dunham had associated themselves together in a joint adventure * * * for the purpose of protecting the said patent rights and developing the processes covered thereby and to secure the value of (those) rights. * * * That it had been determined and agreed upon between (the joint adventurers) and the defendant (that the joint adventure) should be carried out through defendant. * * * (That each of the joint adventurers was qualified to and was to contribute in a specified way to the carrying out of the adventure). * * * That the difficulties to be encountered * * * would be of an unusual, laborious and difficult character. * * * That it was understood and agreed that the success of said adventure depended upon (the exertions of the several adventurers) and that (the several adventurers) were to accept, in the nature of advancements on account of services rendered, payments which would not be compensatory; but that if the adventure were successful all of the benefits and advantages gained were to be equitably divided between all persons aforesaid, including plaintiff.

"That defendant proposed to plaintiff that he associate himself with the parties aforesaid and with defendant in said joint adventure (to do certain legal work required in carrying out the adventure) and that plaintiff should, along with the other parties to said joint adventure, equitably participate in all benefits derived. That plaintiff consented to the terms aforesaid and agreed to perform the services specified and did perform the same. * * * It was, however, especially agreed that defendant would pay as advancements on account (certain stipulated amounts to plaintiff) and that he was to participate as aforesaid in any advantages gained in said adventure. * * * That said contract and agreement remain and still remains in full force and effect.

"That at various times * * * the said agreement and understanding * * * was ratified and confirmed * * * (That various specified things were done, participated in by plaintiff in furtherance of the joint adventure). That all of this was pursuant to the agreement and understanding with plaintiff, * * * (That the objects sought in the joint adventure were accomplished largely through a settlement made with the Standard Oil Company and defendant realized large sums thereby) but that, instead of paying the money thereby received in such settlement into the treasury of (the) court to be there equitably apportioned among all of the joint adventurers, and paying the plaintiff herein such compensation for his contribution and services as should be just and proper (it was arranged by certain of the joint adventurers) that the avails of said settlement should be paid to the defendant * * * and that defendant * * * is proposing to divide the same among said joint adventurers except this plaintiff and * * * all in violation of the understanding and agreement * * * and in derogation of (plaintiff's) rights under his agreement and understanding with the defendant. * * * (That the plaintiff rendered, pursuant to the agreement and understanding, various and difficult services which are specifically described and enumerated, rendering such services over a long period in many places and at great sacrifice to his other professional engagements). That he performed such services upon the agreement and understanding heretofore set out and performed all of the work devolving upon him under the agreement and arrangement herein set out and that he is entitled to an accounting of all profits and benefits derived by reason of said joint adventure, directly or indirectly by said defendant herein or by any of the parties hereto and to a decree of this court awarding to him his full share thereof."

Concerning the cause of action thus stated by plaintiff in count 1 of his petition, plaintiff's learned counsel says that it is "essentially legal," that its fundamentals are "employment (of the plaintiff) as one of several counsel to represent a litigant, the performance of services, the failure of the client to pay and the prayer for recovery."

I cannot reconcile this construction of count 1 with the language used in it. That it is an impossible construction must appear,

it seems to me, from any consideration of the foregoing summary of the petition. Over and over again and so clearly as to be wholly free from ambiguity what was the agreement with the plaintiff is set out. It was not an agreement whereby he was to render legal services for their reasonable value, but an agreement whereby he became one with others in a joint adventure and whereby he was to share with them the profits to be realized in the event of success. The cause of action stated in this count is one in equity.

■ Does the second count of plaintiff's petition state a cause of action in equity or at law?

In hæc verba count 2 is as follows:

"For a second and further cause of action against defendant, plaintiff states that he refers to the first count of this petition as to the matters and facts therein pleaded, with the same force and effect as though they were repeated here and now in this the second count of this petition.

"Plaintiff further shows to the court that the reasonable value of his services in connection with the matters set forth in the first count of this petition is One Million ($1,000,-000) Dollars, and that defendant is indebted to him in that sum.

"Wherefore plaintiff prays judgment against defendant in the sum of One Million ($1,000,000) Dollars, with interest thereon at six per cent per annum, and for costs."

Here, in contrast with count 1, the pleader has made use of certain of the usual labels of a law action. He alleges the reasonable value of his services as would be done in the ordinary quantum meruit case. The prayer is that to be expected in a suit at law. It must be supposed that the pleader designed stating some cause of action other than that stated in count 1. The labels used by him indicate an intention to state a cause of action at law, but once again mere labels cannot alone determine the true nature of the cause of action stated, if any has been stated.

The only fact alleged in count 2 that is not alleged in count 1 is that the reasonable value of plaintiff's services is $1,000,000. But what relation has that fact to any others that are alleged? It would be most pertinent if an agreement to pay the reasonable value of plaintiff's services had been alleged or if from the facts alleged such an agreement could be implied. No such an agreement is alleged, and no facts are alleged from which it can be implied. An express agreement is alleged—that for his participation in it the plaintiff shall share in the profits of a joint adventure. To plead such an express agreement but to ask no recovery because of it, then to plead a fact which has no significance without a wholly different agreement, which is not pleaded, to support it, results, it seems to me, in nothing. So that count 2 states a cause of action neither at law nor in equity. Conceding that the purpose was to state a legal cause of action and conceding also that, if that purpose had been so far accomplished as that a defective, but amendable, result was produced, it would have been sufficient to support a writ of attachment, it must be ruled, I think, that count 2 does not satisfy even that minimum requirement.

The state court then did not have jurisdiction to issue the writ of attachment upon which the summons in garnishment was based, because (1) the cause of action stated in count 1 is in equity, and (2) because no cause of action is stated in count 2.

2. A second ground relied on for quashing the writ of garnishment is that the Skelly Oil Company, the garnishee, owed no debt to the defendant subject to garnishment. The facts, either shown by plaintiff's pleading to the answer of the garnishee or admitted on the oral argument of this motion and in the brief, are these: The defendant was the owner of a patent. It made the claim that the Skelly Company, not an inhabitant of Missouri, had infringed that patent (but not in Missouri) and thereby had damaged the defendant. A suit in equity was instituted in a federal court in Delaware for injunction against infringement and for damages. Defendant prevailed in that suit to the extent that the issue of infringement was resolved in its favor and an injunction granted. The claim for damages was referred to a master and has not been adjudicated. The obligation of the Skelly Company to the defendant for damages by reason of its infringement of defendant's patent is the debt garnished in this case. Is such an obligation subject to garnishment?

■■ Two rules of law here must be set out and then applied. The first is: "The liability of a garnishee to a defendant debtor must originate in and be dependent upon contract in order to authorize the proceeding; a claim for unliquidated damages or a right of action for a tort is not the subject of garnishment." Peycke Bros. Com. Co. v. Co-Operative Co., 195 Mo. App. 417–420, 191 S. W. 1088, 1089. See, also, Eddy v. Heath's Garnishees, 31 Mo. 141, and Ransom v. Hays, Garnishee, 39

Mo. 445. The second is: If the defendant could not have sued the garnishee for the liability involved in the jurisdiction in which the garnishment is brought, then the garnishment cannot be maintained in that jurisdiction. Harris v. Balk, 198 U. S. 215, 25 S. Ct. 625, 49 L. Ed. 1023, 3 Ann. Cas. 1084.

▮ Applying the first of these rules, it would seem that the obligation of the Skelly Company to the defendant is not subject to garnishment, both because the claim of the defendant is based on tort, for infringement of a patent is in the nature of a tort, and because it is a claim for unliquidated damages, for the amount of damages, if any, due the defendant has not been determined.

I conceive that the reason for the rule is that garnishment attaches, so far as concerns us here, only to a debt. Liability on an undetermined tort claim is not a debt. The liability may never be established, and it cannot be established until both the wrongful act and that damage resulted therefrom have been proved.

Take, for example, a case of damages alleged to have been caused by the negligence of another. It cannot be assumed that the plaintiff in such a case certainly has been damaged in some amount merely because it has been proved or is admitted that the defendant was negligent. What was merely a claim of damages for tort up to that point is not something nearer to a debt after that point is passed and before damages have been proved and judicially ascertained. Similar, and equally within the reason for the rule, is a case in which damages for patent infringement are claimed. Liability based only on such a claim certainly is not a debt. In such a case, just as in one based on negligence, liability for damages does not arise upon mere proof of the alleged wrongful act. Damages remain to be and never may be proved. Neither the establishment of the negligence in the one case nor of the infringement in the other converts that which was only an undetermined and unliquidated claim into a debt subject to garnishment.

Nor is this conclusion in any way affected by those cases which hold that an unliquidated claim based on a contract, as a contract of insurance, may be the subject of garnishment, if the amount of the obligation may be ascertained by reference to some definite standard. In such cases the liability arises out of contract, not tort; liability in some amount is certain, not merely possible. The standard for determining the amount is set up in the contract, it is no such elastic meas-

uring rod as must be used in determining the damages resulting from infringement of a patent.

▮ Does not the application of the second of the rules stated compel the same result? It does if the defendant could not have sued the Skelly Company in the Jackson county, Mo., circuit court for damages for infringement of its patent.

It is certain that the defendant could not have sued the Skelly Company in Missouri to enjoin patent infringement and for damages. It could and did sue it in Delaware for both. It could there have sued it for the injunctive relief only. Disregarding for the moment the fact that it also sued for damages and that that branch of the case still is in trial and as yet undetermined and supposing that it had sued only to enjoin patent infringement and had prevailed, could it then sue the Skelly Company for damages wherever it could obtain service? That question is answered by the plaintiff in the affirmative, in the negative by the defendant.

For the right answer we first must look to the applicable statutes. Doing that we find that the courts of the United States are given exclusive jurisdiction "of all cases arising under the patent-right * * * laws of the United States." Title 28, U. S. C. § 371 (28 USCA § 371). And that "In suits brought for the infringement of letters patent the district courts of the United States shall have jurisdiction, in law or in equity, in the district of which the defendant is an inhabitant, or in any district in which the defendant * * * shall have committed acts of infringement and have a regular and established place of business." Title 28, U. S. C. § 109 (28 USCA § 109).

Now if a suit for damages because of patent infringement is a suit "arising under the patent right laws of the United States" and is "a suit brought for the infringement of letters patent," then it is included within the meaning of both the cited statutes. That it is a suit brought for the infringement of letters patent is scarcely debatable. If otherwise there were doubt about that, it is removed by the express language of section 109. The jurisdiction there referred to is of suits "in law or in equity." The only conceivable suit in law involving patent infringement is a suit for damages because of infringement.

I find no decision of any court, and none has been cited, which holds that a suit "for the recovery of damages and profits by reason of infringement (may be prosecuted)

anywhere service can be obtained," as plaintiff's counsel contends in his brief. Moore v. Marsh, 7 Wall. 515, 520, 19 L. Ed. 37, cited by counsel, does not so rule. The language there is only that damages for patent infringement "may be recovered by action on the case in any Circuit Court (i. e. federal circuit court) of competent jurisdiction," but that is not the equivalent of saying that any court is a court of competent jurisdiction. Sandusky, etc., v. De Levaud (D. C.) 251 F. 631, cited by counsel, does not support plaintiff's contention; it rules only that he who is sued on account of patent infringement may waive the privilege accorded him by section 109.

The error in the reasoning of plaintiff's counsel is in assuming that the matter of infringement and the matter of damages are separable. The two reliefs the injured patent owner may have, one injunction, the other damages, are separable, but each depends on infringement; neither relief is separable from that.

If the theory of counsel is correct, then the defendant, having obtained a decree of injunction by reason of infringement in a Delaware federal court, can sue the Skelly Company for damages in a Missouri state court, if it obtains service on that company, for, if it is not still a suit for patent infringement, then the federal court does not have exclusive jurisdiction. What would the defendant be required to allege and prove in such a suit? Is not the very basis of its suit infringement? Must it not allege and prove that? If conceivably infringement might be proved by proving the decree of the Delaware court, still it must be proved. There can be no recovery of damages until it has been proved. The kind of evidence required certainly does not alter the nature of the suit. It is a suit for and on account of patent infringement still.

My conclusion is that upon the admitted facts the obligation, if any, of the Skelly Company to the defendant was not subject to garnishment issued out of the Jackson county, Mo., circuit court.

It follows from the conclusions herein reached that the motions to quash the writs of garnishment should be sustained. Incidentally the defendant has moved for a dismissal of the cases, not as an independent matter, but as an incident which would follow the quashing of the writs of garnishment. But the theory that dismissal necessarily would result from the quashing of the writs of garnishment, as an incident thereof, seems to me to

be erroneous in view of the provisions of section 83, title 28, U. S. C. (28 USCA § 83), under which an alias summons might issue out of this court in each of these cases. See Maichok v. Bertha-Consumers Co. (6 C. C. A.) 25 F.(2d) 257, 258. Because of that statute, the prayer for dismissal in the motions should be denied.

### Order.

The motions of defendant to quash the writs of garnishment issued to the Skelly Oil Company, having been duly considered by the court and the court being fully advised in the premises, are sustained, and the writs are quashed. It is so ordered. The plaintiff in each of the cases is allowed an exception to this order.