STATE of Missouri at the Relation of GOVERNMENT EMPLOYEES INSURANCE COMPANY, a Corporation, Relator,

v.

Honorable Herbert LASKY, Judge of the Circuit Court of the County of St. Louis, State of Missouri, Respondent.

No. 33613.

St. Louis Court of Appeals, Missouri.

May 26, 1970.

Morris, Wuestling & James, St. Louis, for relator.

Robertson, De Voto, Wieland & Lange, St. Louis, for respondent.

DOERNER, Commissioner.

In an action for personal injuries brought by a resident plaintiff against a nonresident defendant resulting from an accident which occurred in the nonresident's state, is the contractual obligation of the defendant's liability insurer to defend and indemnify the defendant a "debt" owing to defendant and as such subject to attachment? That is the new and novel

question presented to us in this original proceeding in prohibition.

The essential facts involved in this proceeding are these: As Mrs. Louise Taussig, a resident of St. Louis County, Missouri, was in the act of entering her son's parked car in Newport, Rhode Island, on April 5, 1968, it was struck and collided with by an automobile being operated by Jerome D. Slack, a resident of Newport. Mrs. Taussig filed an action against Slack in the Circuit Court of St. Louis County on April 16, 1969 to recover for her personal injuries. Based on an affidavit as to Slack's nonresidency in Missouri, an attachment and summons was issued to the sheriff of Cole County commanding him to attach the lands, tenements, goods, chattels, rights, moneys, credits, evidences of debt and effects of Slack, and to summon as garnishee the relator, Government Employees Insurance Company of Washington, D. C. The summons and attachment were served on the Superintendent of the Division of Insurance, Department of Business and Administration, on April 22, 1969, who forwarded them to the relator on the same day.

Relator is a foreign corporation, with its principal place of business in the District of Columbia, and is authorized to do business in Missouri. Prior to the date of the accident relator had issued a policy of liability insurance to Slack, either in Rhode Island or in Virginia. So far as the record before us shows the policy is in the usual form and obligates the relator to defend any action brought against Slack arising out of his operation of his automobile, and to indemnify the insured from any resulting judgment obtained against him.

A summons, together with a copy of the garnishment in aid of attachment, was sent by registered mail to the defendant Slack on April 30, 1969, with the request that it be receipted for only by the defendant, but was returned on June 2, 1969. However, in the meantime, on May 16, 1969, defendant, appearing specially and for the purposes of the motion only, filed a motion to dissolve, vacate and quash the attachment and summons under and by virtue of which plaintiff was attempting to obtain jurisdiction of the court over defendant, and as grounds for his motion alleged that the attachment and summons " * * * has been improperly filed and served, is unlawful and is contrary to the Constitution of the United States of America, the Constitution of the State of Missouri, the Statutes of the State of Missouri and the common law of the State of Missouri." Defendant's motion was presented and argued by the parties on May 22, 1969, and taken under submission by the respondent Judge, who requested that memoranda in support and in opposition to the motion be submitted, with which request both parties complied. The next day, May 23, 1969, plaintiff filed interrogatories directed to the relator as garnishee, but according to the photostatic copy of the minutes submitted to us these interrogatories were never answered by the relator, nor did the plaintiff undertake to compel the relator to do so. See Civil Rules 90.12 and 90.13, V.A.M.R. An alias summons for service by registered mail was sent to the defendant on June 27, 1969, and his return receipt therefore was filed on July 10, 1969. On July 15, 1969, respondent entered an order overruling the defendant's motion to dissolve, vacate and quash the summons and attachment. Thereafter relator filed its petition for our writ of prohibition, and we issued our preliminary rule.

■ As our statement of the facts makes clear, in the action pending before respondent it was the defendant who moved to dissolve, vacate and quash the summons and attachment served upon the garnishee, the relator here. The relator filed no such motion, nor did it answer the interrogatories propounded by the plaintiff in that action. In his brief respondent maintains that under that state of the record he never had an opportunity to rule on the decisive question now presented, and that the relator's petition is therefore

premature. As stated in State ex rel. Brncic v. Huck, 296 Mo. 374, 246 S.W. 303, 305, cited by respondent, "The general rule is that an application for a writ of prohibition will not be considered unless a plea to the jurisdiction has been filed and overruled in the lower court, or the inferior court has been asked in some form, without avail, to refrain from further proceeding or to dismiss the same. * * *" But our courts have never recognized that as a hard and fast rule and there are many well-recognized exceptions to it. State ex rel McEntee v. Bright, 224 Mo. 514, 123 S.W. 1057; State ex rel Missouri Pac. Ry. Co. v. Williams, 221 Mo. 227, 120 S.W. 740. One of such well-recognized exceptions is when the return of the respondent judge affirms his jurisdiction or denies that he acted in excess of his jurisdiction, for it follows that it would have been useless for the relator to make his attack in the first instance. State ex rel Henderson v. Cook, 353 Mo. 272, 182 S.W.2d 292; State ex rel Missouri Pac. Ry. Co. v. Williams, supra; State ex rel City of Mansfield v. Crain, Mo.App., 301 S.W.2d 415. In the present case the respondent was asked, without avail, to refrain from further proceeding, albeit by the defendant rather than the garnishee, the relator here. The reason assigned by the defendant and passed upon by the respondent, as shown by the law memoranda presented to him, which are before us, is precisely the same point now presented to us by the relator, that is, whether the contractual obligation of the relator as defendant's liability insurer to defend and indemnify the defendant is a "debt" owing to defendant and as such subject to attachment. That the relator as garnishee holds no other property or effects of the relator, and that the sole purpose of the attachment is to secure in rem jurisdiction of defendant Slack by attaching the defendant's rights under the liability policy issued by relator to Slack is clear both from relator's petition and respondent's return, as well as by the answers of respondent's counsel to questions propounded by the court during oral argument.

Concededly it would have been the better practice for relator to have itself contest the respondent's jurisdiction by an appropriate motion, or to have answered, in response to the plaintiff's interrogatories, that it was not indebted to defendant, which denial plaintiff undoubtedly would have traversed by pleading relator's purported indebtedness under the liability policy issued to defendant. But to now quash our preliminary writ as premature would be of no avail to respondent or to either of the parties, and would only result in unnecessary delay, for by his ruling on defendant's motion and by his return respondent has clearly indicated what his ruling would be if relator was now required to follow either of the foregoing procedures to raise the very question now presented. And since any further deferment may be detrimental to the interests of the plaintiff because of the applicable statute of limitations, we are of the opinion that the substantive question should be decided without further delay. State ex rel City of Mansfield v. Crain, supra; State of Missouri ex rel Hilleary and Partners, Ltd. v. Kelly, Mo.App., 448 S.W.2d 926.

■ Respondent also argues that prohibition is not the proper remedy to test his jurisdiction of the action pending before him for the reason that, "* * * where a court has jurisdiction of the subject-matter of an action, and the question of its jurisdiction of the person turns upon some fact to be determined by the court, its ruling that it has jurisdiction, if wrong, is simply error, for which prohibition is not the proper remedy. * * *" State ex rel Fabrico v. Johnson, 293 Mo. 302, 239 S.W. 844, 847-848. That rule is not applicable here, however, for respondent's ruling that he had jurisdiction was not based upon his determination of a disputed issue of fact, but rather upon a controverted question of law.

In support of his contention that the relator's contractual obligation to defend and indemnify the defendant is a debt subject to attachment respondent relies in the main

on two cases decided by the Court of Appeals of New York, Seider v. Roth, 17 N.Y.2d 111, 269 N.Y.S.2d 99, 216 N.E.2d 312, and Simpson v. Loehmann, 21 N.Y.2d 305, 287 N.Y.S.2d 633, 234 N.E.2d 669. In Seider, two plaintiffs, Mr. and Mrs. Seider, residents of New York, were injured in an automobile accident in Vermont, allegedly through the negligence of one Lemiux, a resident of Quebec. The Seiders brought suit in New York against Lemiux (as well as against one Roth, the operator of a third car involved in the accident) and caused an attachment to be served on Hartford Accident and Indemnity Company, which had issued a policy of liability insurance to Lemiux in Canada. Lemiux moved to vacate the attachment, and, when his motion was overruled, appealed. The question presented was whether Hartford's contractual obligation to defend and indemnify Lemiux was a "debt" within the meaning of the controlling New York statutes, CPLR 5201 and 6202, and hence subject to attachment. The former section defined a debt as one " * * * which is past due or which is yet to become due, certainly or upon demand of the judgment debtor, * * *." In an opinion written by Chief Judge Desmond, and concurred in by three other members of the court, the majority answered the question in the affirmative, and in reaching that conclusion the majority relied primarily on the decision in Matter of Riggle's Estate, 11 N.Y. 2d 73, 226 N.Y.S.2d 416, 181 N.E.2d 436. Because of the reliance on that case we quote the reference to it made in the majority opinion (216 N.E.2d 314):

" * * * The late Robert Riggle, who had been a resident of Illinois, was the driver of an automobile which, in an accident in Wyoming, had injured a New York resident named Mabel Wells. Mrs. Wells, in order to sue Riggle in New York State, moved to have appointed in this State an administrator with the will annexed of Riggle's property. The only property claimed to belong to Riggle's estate in New York State was 'the personal obligation of an indemnity insurance carrier to defend him.' Section 47 of the Surrogate's Court Act provided that, for the purpose of conferring jurisdiction upon a Surrogate's Court, 'a debt owing to a decedent by a resident of the state' is regarded as personal property. The careful and convincing majority opinion in this court concluded, with ample citation of precedent, that within the broad meaning of section 47 this liability insurance policy, even though no judgment had been obtained against the insured, made decedent's estate a 'creditor' and the insurer a 'debtor' sufficient for the purposes of the statute. It is interesting to note that the dissenting Judge in Matter of Riggle's Estate conceded that the insurance company's obligation 'to defend and contingently indemnify' was a debt, but he was of the opinion, contrary to that of the majority, that the insurer was not a resident of the State within the meaning of section 47. The reasoning of the *Riggle* case is sound and calls for an affirmance here. * *"

In a dissenting opinion, written by Judge Burke and concurred in by Judges Scileppi and Bergan, it was said (216 N.E.2d 315, 316):

"* * * The facts in Matter of Riggle's Estate, 11 N.Y.2d 73, 226 N.Y.S.2d 416, 181 N.E.2d 436 and Gordon v. Shea, 300 Mass. 95, 14 N.E.2d 105, illustrate the fallacy of plaintiff's reasoning. The defendant in *Riggle* had been personally served and in both cases in personam jurisdiction over the defendants had been properly obtained before they died. There the obligation to defend had accrued and the insurers were actually defending the suit brought against the insured. At that time there was a 'debt' within the meaning not only of estate law but also within the meaning of CPLR 5201. * * *"

In addition to the fact that in Riggle the plaintiff had obtained personal service in New York on the defendant before his death, so that the insurer's obligation to

defend and indemnify him had accrued, our own review of Riggle has disclosed one other factual distinction to which a great deal of attention was given in the opinion in that case. The automobile in which Mabel K. Wells was a passenger at the time of the accident was owned by one Walter Wells, a resident of New York (his relationship, if any, to Mabel was not disclosed) and the policy of insurance was issued to him in New York. The court in Riggle held that the insurer, incorporated in Illinois but licensed to do business in New York, was therefore a resident of New York so far as the situs of its obligation to Riggle was concerned.

The author of the dissenting opinion in Seider also pointed out the inconsistency of the majority opinion with prior decisions regarding contingent obligations (216 N.E. 2d 315):

"* * * The so-called 'debt' which is supposed to be subject to attachment is a mere promise made to the nonresident insured by the foreign insurance carrier to *defend and indemnify* the Canadian resident *if a suit is commenced* and *if damages are awarded* against the insured. Such a promise is contingent in nature. It is exactly this type of contingent undertaking which does not fall within the definition of attachable debt contained in CPLR 5201 (subd. [a]), i. e., one which 'is past due or which is yet to become due, certainly or upon demand of the judgment debtor.' The bare undertaking to defend and indemnify is not an obligation 'past due' and it is not certain to become due until jurisdiction over the insured is *properly* obtained. In New York 'It is well settled that an indebtedness is not attachable unless it is absolutely payable at present, or in the future and not dependable upon *any* contingency.' (Herrmann & Grace v. City of New York, 130 App.Div. 531, 535, 114 N.Y.S. 1107, 1110, affd. on opn. of Appellate Division 199 N.Y. 600, 93 N.E. 376; italics supplied.)

"Faced with this long-established rule the plaintiffs indulge in circular ratiocination. The jurisdiction, they assert, is based upon a promise which evidently does not mature until there is jurisdiction. The existence of the policy is used as a sufficient basis for jurisdiction to start the very action necessary to activate the insurer's obligation under the policy. In other words, the promise to defend the insured is assumed to furnish the jurisdiction for a civil suit which must be validly commenced before the obligation to defend can possibly accrue. 'This is a bootstrap situation.' (Professor D. D. Siegel, Supplementary Commentary to CPLR 5201, McKinney's Cons.Laws of N.Y., Book 7B, 1965 Pamphlet, pp. 10–13.) It is indisputable that prior to the commencement of the suit the insurer owed no 'debt' to the insured. * * *"

The decision in Seider evoked considerable comment in legal publications, most of it critical and adverse. Prof. David D. Siegel, author of the Supplementary Commentary to CPLR 5201, McKinney's Cons. Laws of N.Y., Book 7B (Cum.Supp.1966) pointed out that if the insurer's obligation to defend, in and of itself, was the attachable debt, it was not only contingent but impossible of measurement in terms of money value, and commented that as the result of Seider, "* * * The Pandora's Box is open." In 67 Columbia L.Rev. 550, the contingency aspect was stressed, as well as the insufficiency of the garnishee-Hartford's contacts with New York to make the purported debt due and owing in that state, and the author concluded (p. 553) that, "* * * By permitting the attachment of an obligation to indemnify which was contingent upon the rendering of a judgment against the insured, the court in effect rewrote the insurance contract. * * *" In 71 Dickinson L.Rev. 653, 666, it was said that, "The holding in *Seider* establishes a new and unique proposition of law * * *" and the conclusion arrived at (p. 667) was "* * * that the result reached

by the New York court in *Seider* is unsound. * * *" In 16 Buffalo L.Rev. 769, it was stated that one result of Seider (p. 774) "* * * is that it has by judicial decision created a 'direct action' against the insurer, although the legislature had not previously acted on this matter * * *" and the author urged (p. 780) that, "If the same or a similar issue again comes before the Court of Appeals, it should consider the demonstrated criticisms and ramifications it originally neglected to consider." The author of the comment in 51 Minn.L.Rev. 158 was generally favorable to the result reached in Seider, but conceded (p. 163) "Upon the rationale of the instant case, a suit may be brought in any state in which the defendant's insurer is doing business." And among other criticisms which the author of the article in 32 American Trial Lawyers Journal 328 concedes has been leveled at Seider (p. 335) was that, "It gives the plaintiff an unfair tactical advantage in enabling him to engage in forum shopping." His answer to that charge was, "Even if we assume that such an advantage is 'unfair', we feel that any resulting excesses can be alleviated by an expansion of the flexible and balancing doctrine of forum non conveniences, rather than by arbitrarily precluding the plaintiff from suing in an appropriate forum." Presumably the author of that article considered New York to have been an appropriate forum although the defendant lived in Canada, the liability policy was issued in Canada, and the accident occurred in Vermont.

The hope expressed by the author of the article in the Buffalo Law Review that the Court of Appeals, if given the opportunity, would reconsider and reverse the result reached in Seider proved to be a forlorn one. That opportunity was presented in Simpson v. Loehmann, 21 N.Y.2d 305, 287 N.Y.S.2d 633, 234 N.E.2d 669, but was rejected by a decision which, at least in the opinion of the writer, is an anomaly. There the infant plaintiff, a resident of New York, was injured when cut by the propeller of a boat owned by the defendant, a Connecticut resident, and operated by the latter in waters off of Madison, Connecticut. The infant and his father filed suit in New York, had summons delivered to the defendant at his residence in Connecticut, and attached a liability policy issued to the defendant in that state by the Insurance Company of North America, a Pennsylvania corporation which did business in New York and which maintained an office in Manhattan. The defendant moved to vacate the attachment on jurisdictional and constitutional grounds, which motion was denied at Special Term, and that ruling was affirmed by the Appellate Division on constraint of Seider.

Seider was handed down on March 24, 1966, and the opinion in Simpson, on December 29, 1967. In the interim Chief Judge Desmond, who wrote the majority opinion in Seider, and Judge Voorhis, who concurred in it, had left the court, Judge Fuld, who had also concurred, had become Chief Judge, and the vacancies on the court had been filled by Judges Breitel and Jasen. The opinion in Simpson reaffirming Seider was written by Chief Judge Fuld, and concurred in by Judge Jasen. Judge Keating concurred in a separate opinion. Judge Breitel began his separate concurring opinion (234 N.E.2d 674) by stating:

"I concur but only on constraint of Seider v. Roth (17 N.Y.2d 111, 269 N.Y.S.2d 99, 216 N.E.2d 312) so recently decided by this court. Only a major reappraisal by the court, rather than the accident of a change in its composition, would justify the overruling of that precedent. Yet the theoretical unsoundness of the *Seider* case and the undesirable practical consequences of its rule require some comment if only, perhaps, to hasten the day of its overruling or its annulment by legislation.

"It is the most tenuous of nominalist thinking that accords the status of an asset, leviable and attachable, to a contin-

gent liability to defend and indemnify under a public liability insurance policy."

He then proceeded to sharply criticize the reasoning of the majority opinion in Seider, and observed (p. 675) that:

"* * * As for the effect of the rule, the practical consequences are highly undesirable. This State, and particularly its chief city, is the mecca for those seeking high verdicts in personal injury cases (see, e.g., Gilchrist v. Trans-Canada Air Lines, 27 A.D.2d 524, 275 N.Y.S. 2d 394). On the basis of the rule in the *Seider* case, it will be the rare plaintiff who cannot invoke the jurisdiction of New York courts, even though only quasi in rem, since it will be a very small insurance company that does not have a palpable contact with this State."

But despite his stinging criticism of the rationale of Seider Judge Breitel nevertheless concluded to concur for the reason stated by him (p. 675):

"Accordingly, I concur to affirm but only because the institutional stability of a court is more important than any single tolerable error which I may believe it has committed."

Judge Bergan, who had joined in the dissenting opinion in Seider, concurred in Judge Breitel's purported concurring opinion in Simpson. Judge Burke again wrote a dissenting opinion, in which Judge Scileppi concurred. Thus the anomalous result reached in Simpson was that three of the seven judges concluded that Seider should be reaffirmed, two judges believed it was wrong but concurred because the "institutional stability" of the court was more important to them than the correction of what they forcefully stated had been an erroneous decision, and two judges dissented.

Other than the two cases from New York, respondent has not cited any decision holding that an insurer's contractual obligation to defend and indemnify a nonresident insured is an attachable debt. Our own research has disclosed only one, that of the Supreme Court of Rhode Island in De Rentiis et ux. v. Lewis et al., R.I., 258 A.2d 464, handed down on November 5, 1969. There the plaintiffs, De Rentiis, husband and wife, residents of Rhode Island, were injured as a consequence of the negligent operation of an automobile by the minor daughter of the defendant Lewis, residents of Connecticut, in which state the accident occurred. The plaintiffs had a summons and writ of attachment served on Lewis' insurer, National Union Fire Insurance Company, incorporated elsewhere but doing business in Rhode Island, and a copy of the summons was mailed to Lewis. The insurer and Lewis filed motions to dismiss, based principally on the ground that the insurer's contractual obligation to defend and indemnify was not attachable property within the meaning of the Rhode Island statute. The motions were overruled, and certiorari was applied for and granted. The court referred to the various arguments in derogation of Seider but stated that it was not necessary for it to reach the conflicting arguments on that decision. Instead, it held (p. 464) that "* * * an interest such as that of defendant Lewis in the instant case, in his policy of insurance with defendant National Union Fire Insurance Company, was not attachable property within the legislative intendment * * *" of the Rhode Island statute. That court also rejected the plaintiffs' contention that under another Rhode Island statute the insurance contract established the "necessary minimum contacts" to make Lewis amenable to the jurisdiction of its courts in an action in personam.

 In his brief respondent argues that a debt is a debt whether it is in New York or Missouri, and that if a debt can be attached in New York it can as well be attached in Missouri. But that argument begs the question of what is a "debt." And the determination of whether the contractual obligation of a liability insurer to defend and indemnify an insured is an attachable debt must be determined in the

light of our statutes and our decisions construing and applying them, not those of some other state. Section 525.010, RSMo 1959, V.A.M.S., provides:

> "All persons shall be subject to garnishment, on attachment or execution, who are named as garnishees in the writ, or have in their possession goods, moneys or effects of the defendant not actually seized by the officer, and all debtors of the defendant, and such others as the plaintiff or his attorney shall direct to be summoned as garnishees."

As long ago as 1876, our Supreme Court said, in Hearne et al. v. Keath et al., 63 Mo. 84, 89:

> "The debt for which an attachment may issue must possess an actual character and not be merely possible, and dependent upon a contingency which may never happen. Therefore, a surety upon a note cannot institute the proceeding till he has paid the note, or done that which is deemed equivalent thereto. In this State the statute authorizes an attachment in some instances, where the debt is not due, yet the provision plainly contemplates that to warrant the proceeding, there must be an actual subsisting debt, which will become due by the efflux of time. When this suit was instituted there was no actual or subsisting debt existing in favor of the plaintiffs, and the consequence is, that the judgment must be reversed and the cause remanded."

And by an unbroken line of decisions since that time our courts have held that to be the subject of a garnishment the debt must be certain and not contingent. Holker v. Hennessy, 143 Mo. 80, 44 S.W. 794; Potter v. Whitten, 170 Mo.App. 108, 155 S.W. 80; Raithel v. Hamilton-Schmidt Surgical Co., Mo.App., 48 S.W.2d 79. A corresponding principle is that the indebtedness must be absolutely due as a money demand to be subject to garnishment. Scales v. Southern Hotel Co., 37 Mo. 520; Raithel

v. Hamilton-Schmidt Surgical Co., supra; Reinhart v. Empire Soap Co., 33 Mo.App. 24. Thus it is a long established rule that a mere liability of a garnishee to an action on the part of the defendant for damages not liquidated, either in tort or for breach of contract, is not subject to garnishment. Ransom v. Hays, 39 Mo. 445; Peycke Bros. Commission Co. v. Sandstone Co-op. Co., 195 Mo.App. 417, 191 S.W. 1088; South Central Securities Co. v. Vernon, 227 Mo.App. 486, 54 S.W.2d 416.

■ Considered in the light of these well-established principles, the conclusion is inescapable that neither of the contractual obligations of the relator in this proceeding is an attachable debt within the meaning of our statutes. The first of such obligations, to defend the defendant Slack in a suit *properly* brought against him, is clearly not an indebtedness absolutely due as a money demand. In and of itself, what monetary valuation could be placed on it? The second obligation of the relator, to indemnify Slack up to the limits of the liability policy issued to Slack, will mature only as, if and when the plaintiff, Mrs. Taussig, obtains a valid judgment against Slack. It would be difficult to imagine a so-called indebtedness more contingent and speculative than an action for personal injuries resulting from the alleged negligence of a defendant.

Respondent also cites Kennedy v. Dixon, Mo., 439 S.W.2d 173, and maintains that the facts in the instant case bring it within the principal contacts rule followed in that case. That rule, however, is not applicable to this proceeding. The question here is not whether the defendant's purported liability for his alleged tort is to be determined by the law of Missouri, where the plaintiff resides, or that of Rhode Island, where the defendant resides and the accident occurred. The issue here is whether the garnishee owed defendant such a debt as will give the court in rem jurisdiction to maintain plaintiff's action, regardless of

which state's law will govern the merits of her suit.

For the reasons stated our provisional rule in prohibition is made permanent.

PER CURIAM:

The foregoing opinion by DOERNER, C., is adopted as the opinion of this court.

Accordingly, provisional rule in prohibition is made permanent.

WOLFE, P. J., and BRADY and DOWD, JJ., concur.