James H. Beckham et al., Appellants, v. W. F. Carter, Defendant, and Tootle, Hanna & Company, Garnishees, Respondents.

Kansas City Court of Appeals, December 7, 1885.

1. Chattel Mortgages—Rights After Forfeiture and Possession Taken.—The general doctrine is that after forfeiture under a chattel mortgage and possession taken by the mortgagee, he is the absolute owner of the property, and the mortgageor has no interest in the property, the subject of further mortgage, and, therefore, a second mortgage made by him is inoperative. And such second mortgage, if effective at any time, must be so at the instant of its execution, and could not ripen into a valid security on the arising of a surplus after sale under the first mortgage. But the legislature may regulate this matter by statute.

2. ———— Statute of Kansas Concerning—Construction of—Case Adjudged.—The contract in this case was made in Kansas, respecting property situate there, and to be executed and performed within the state, the laws of Kansas must govern this transaction. Section 15 of the statute of that state declares that, in the absence of any contrary stipulation, the mortgagee of personal property has both the legal title and right of possession. The subsequent sections of the statute unmistakably indicate that in the minds of the framers of the law, there might be a second mortgage placed upon such property; and, hence, the rule of the common law does not apply, and so it has been held by the supreme court of Kansas in the case of *Wolfley v. Rising*, 12 Kansas 535, construing this statute . *Held,*

that a second mortgage given by defendant in this case, is, under this law, valid.

3. ———— GARNISHMENT—EQUITY OF REDEMPTION NOT ATTACHABLE.— Upon general principles, and in the absence of statutory interposition, an execution cannot be levied on a mere equity. The interest of a mortgageor in personalty mortgaged, is the mere equitable right of redemption by paying the debt. Hence personalty so situated is not subject to sale under execution, and, therefore, not attachable. It follows that the mortgagee of personalty cannot be held as garnishee of the mortgageor while the property is the subject of the mortgage. Drake on Attachments, sect. 539. No rule of law is more firmly settled than that the process of garnishment is essentially a process at law. It extends only to legal assets and intercepts only legal credits. It is not equitable in its nature or procedure and never can touch mere equitable interests and assets in the hands of the garnishee. *Atwood v. Hale*, 17 Mo. App. 81.

4. ———— ———— DEBT MUST BE CERTAIN.—An attachment, which is, in effect, a proceeding *in rem*, must operate on something *in esse*. It may be *debitum in praesenti, solvendum in futuro*, but it must exist on an obligation unconditional and certainly to mature in the future. If the liability of the garnishee at the time of notice, depends on a contingency, which may never arise or be performed, such debt is not the subject of garnishment. Section 2520, Revised Statutes of this state, has no applicability to such a case as this case. The rights, credits and effects in the hands of a garnishee, such as are not encumbered with trusts, and such as may be delivered over or paid to the officer under the direction of the court.

APPEAL from Jackson Circuit Court, HON. F. M. BLACK, Judge.

*Affirmed.*

Statement of case by the court.

This is a proceeding by garnishment under attachment. The debtor, W. F. Carter, resided at Clay Center in the state of Kansas. The garnishees, Tootle, Hanna & Co., are residents of the state of Missouri, doing business at Kansas City. On the 11th day of April, 1882, Carter, being indebted to Tootle, Hanna & Co., executed to them a chattel mortgage on his stock of goods in store at said Clay Center, to secure said debt. The mortgage was duly filed with the register of that place, which filing under the laws of that state, takes the place of recording,

and constitutes constructive notice. On the 13th day of April, 1883, the plaintiffs finding Carter in Kansas City, sued him by attachment in the Jackson circuit court on personal service, and summond Tootle, Hanna & Co. as garnishees.

The chattel mortgage was in the ordinary form, providing that the mortgagees on default might take possession of the goods and sell the same to pay the debt, and to pay the surplus, if any, over to the mortgageor or his legal representatives ; and stipulating that until default be made the mortgageor might remain in possession of the goods. At the trial, the cause was submitted to the court sitting as a jury on the following agreed statement of facts among other evidence :

"It is agreed that the above entitled suit was instituted by attachment on the 13th day of April, 1882. That on the same day the garnishees were served as such ; that they were then in possession of goods of the defendant to an amount in excess of their debt, under a forfeited chattel mortgage, and were then selling the same under a power of sale contained in the mortgage. That said mortgage was only to secure to them the sum of $1,427.17. That after the service of said garnishment, to-wit : On the 15th day of April, 1882, defendant mortgageor, gave second mortgage to J. A. Cooper & Company, Grimes, Woods, Laforce & Company, and V. B. Buck & Company, amounting to $1,025.17. That at the time of giving the second mortgage, garnishees were in possession of the goods under their forfeited mortgage. That garnishees remained in possession, and sold sufficient of the goods to satisfy their claim of $1,427.17. That they then turned over the remainder of the goods to said second mortgagees, and from which was realized by said second mortgagees the net sum of $902.02.

"Plaintiffs have a just and legal claim against defendant, Carter, for the sum of $327.24, now due and unpaid."

The following sections of the statute of Kansas were put in evidence :

"Section 15. In the absence of stipulations to the contrary, the mortgagee of personal property shall have the legal title thereto, and the right of possession."

"Section 17. After condition broken, the mortgagee, or his assignee, may proceed to sell the mortgaged property, or so much thereof as may be necessary to satisfy the mortgage and costs of sale, having first given notice of the time and place of sale by written or printed hand bills, posted up in at least four public places in the township or city in which the property is to be sold, at least ten days previous to the sale."

"Section 18. If the mortgagee or his assignee shall have obtained possession of the mortgaged property, either before or after condition broken, the mortgageor, or any subsequent mortgagee, may demand in writing a sale of such property. In such case the mortgagee shall proceed to sell the property, having first given the same notice as provided in the preceding section."

"Section 19. If, after satisfying the mortgage and costs of sale, there be any surplus remaining, the same shall be paid to any subsequent mortgagee entitled thereto, or to the mortgageor or his assigns."

The court found the issues for the garnishees and discharged them.

From this judgment the plaintiffs have appealed.

LIPSCOMB & RUST, for the appellants.

I. Section 2520, Revised Statutes of Missouri, says that *property* which comes into the hands of the garnishee, after he is served with notice, and before answer, is subject to the garnishment. By that provision it meant to enable a party to constitute the garnishee a *trustee* to hold any property of defendant which might come under his control up to the time of answering. Said section applies not only to *property*, which may come under the control of the garnishee after garnishment, but it as certainly applies to *debts* which garnishee may owe defendant up to the time of answer; whether said debts had *any kind* of existence at time of service or not, and

even though the circumstances out of which the debt grew may not have been in existence, or even contemplated at the time of garnishment.

II. Section 17 of the Kansas statute, certainly confers no rights on the mortgageor. It simply confers on the mortgagee the privilege ( it is not obligatory), of foreclosing it in a particular way. It is, as a power to foreclose, merely cumulative. Jones on Chattel Mortgages, sect. 778 ; see, also, specially, sects. 707, 711, 712, 773 and 777. Section 18 of the Kansas statute is also merely cumulative. It confers on the mortgagee or his assigns a means of availing themselves of the equity of redemption if they see fit. These Kansas statutes clearly confer no property interest in the goods on the mortgageor, when the mortgagee is in possession under a forfeiture. All that it confers is a mere personal privilege. The interest given to the mortgagee is a legal interest ; if a legal interest it was subject to garnishment.

III. This mortgage was a law unto itself. It was expressly taken from under the fifteenth section, and the other sections were substituted by express provisions in the mortgage itself. The case of *Wolfley v. Rising* (12 Kansas 535), is as to determining the effect of these sections a mere *dictum.* Jones on Chattel Mortgages, sect. 706 ; *Hinman v. Judson*, 13 Barb. (N. Y.) 629.

IV. Can a garnishee in this state be held on account of personal property under his control situated in Kansas ? The case of *Childs v. Digby* (24 Pa. St.), decides that he can. And the subsequent case of *Pa. R. R. v. Pennock*, (51 Pa. St. 224), by necessary inference of language, *under such a statute* as ours, would hold the garnishee liable in such a case as this.

Karnes & Ess, for the respondents.

I. Before or after condition broken, the mortgagee might take possession under his legal title, but he was not privileged, under the Kansas statutes, to deal with the property as absolute owner. The mortgageor or any subsequent mortgagee might demand a sale thereof, etc. *Wolfley v. Rising*, 12 Kansas 535.

II. When the mortgage had been made there was an equity of redemption remaining in Carter. This was all the property of Carter in the hands of garnishees at date of garnishment. By an appropriate proceeding in equity, this might have been reached, but could not be by the garnishee process. *King v. Bailey*, 8 Mo. 332; *Boyce v. Smith*, 16 Mo. 322; *Lackland v. Garesche*, 56 Mo. 267; *Sheedy v. Second National Bank*, 62 Mo. 17; *Greely v. Reading*, 74 Mo. 309.

III. The *situs* of the property was in the state of Kansas. The mortgage was made and recorded there. Tootle, Hanna & Company took possession of the property in Kansas, and were selling it out in that state, when the garnishment was served and when a second mortgage was made thereon. The domicil of Carter was in Kansas and never changed. This garnishment was served in Missouri. The statutes of this state (sect. 2517), does not contemplate *possession* of property in another state. In the case of garnishment of a non-resident, the property under his control in a foreign jurisdiction cannot be reached. Drake on Attachments (5 Ed.) sects. 473, 474, 475; *Green v. Bank*, 25 Conn. 452.

IV. The parties to the mortgage are bound by the Kansas law, having contracted with reference to it. The garnishee could not legally have delivered the property or the proceeds of it to plaintiffs.

PHILIPS, P. J.—This case has been presented before us, both by brief and oral argument, with much zeal and ability, and we have given the material points involved much consideration. The insistance of appellant, in the first instance, is, that after forfeiture under the chattel mortgage and possession taken by the mortgagee, he is the absolute owner of the property, and the mortgageor has no interest in the property as the subject of further mortgage; and, therefore, the second mortgage made by him is inoperative. This may be conceded to be the general doctrine. *Robinson v. Campbell*, 8 Mo. 365; *Hulson v. Watter*, 34 How. Pr. 385; *Burdick v. Mc Vanner*, 2

Denio 170 ; *Chapman v. Hunt*, 13 N. J. Eq. 370 ; Jones on Chattel Mortgage, sect. 454.

It may further be conceded that the second mortgage, if effective at any time, had to be so at the instant of its execution, and could not ripen into a valid security on the arising of a surplus after sale under the first mortgage. *Hulson v. Watter, supra.*

But I apprehend there can be as little question that it was within the competency of the legislature of the state of Kansas to regulate this matter by statute. The contract having been made in the state of Kansas, respecting property situate there, and to be executed and performed within the state, we are to look to the local laws, and the construction placed thereon by the judiciary of that state for our guidance and government.

Section fifteen of said statute declares that, in the absence of any contrary stipulation, the mortgagee of personal property has both the legal title and right of possession. The subsequent sections of the statute unmistakably indicate that in the mind of the framers of the law, there might be a second mortgage placed upon such property. On what could the second mortgage take effect or rest, save the equitable interest—the equity of redemption—of the mortgageor ? This, it seems to me, is too clear to require argument or the aid of judicial construction. Brewer, C. J., we think, in *Wolfley v. Rising* (12 Kansas, 535), has determined that the rule of the common law, as above expressed, does not apply under the statutes of that state. He says : "We know that there are authorities holding that after condition broken the title to the mortgaged property becomes absolute in the mortgagee without redemption. But sections seventeen, eighteen and nineteen of our mortgage act, contemplate a different rule. The first two sections provide for a sale of the mortgaged property, and said section nineteen reads that 'if, after satisfying the mortgage and costs of sale, there be any surplus remaining the same shall be paid to any subsequent mortgagee entitled thereto, or to the mortgageor or his assigns." So that, in the action

of replevin, which was the case pending, the mortgagee was held not to be entitled to an assessment of damages equal to the whole value of the mortgaged property, but only to the extent of the mortgagee's debt, the surplus belonging to the mortgageor or his assigns.

It must follow that the second mortgage was valid. The interest conveyed, upon which it operated, was the equity of redemption, the surplus after satisfying the first mortgage debt. This surplus, the statute made it the duty of the first mortgagee, to pay over to the second mortgagee, unless it was intercepted by some prior equity or right. I am unable to comprehend how this surplus could be intercepted by the process of garnishment. It was a mere equitable interest. Tootle, Hanna. & Company were rightfully in possession of the goods under their mortgage. They had the right to hold them until their debt was satisfied. They held the whole legal title and the possession. No subsequent process of any court, on a junior claim, could interrupt that title or possession.

On what, then, did the garnishment operate, unless it was the equitable interest of the mortgageor? That was all that then remained. No rule of law is more firmly rooted than that the process of garnishment is essentially a proceeding at law. It extends only to legal assets, and intercepts only legal credits. It is not equitable in its nature or procedure, and never can touch mere equitable interests and assets in the hands of the garnishee. *Lackland v. Garesche*, 56 Mo. 270 ; *Atwood v. Hale et al.*, 17 Mo. App. 81.

"Upon general principles, and in the absence of statutory interposition, an execution cannot be levied on a mere equity. The interest of a mortgageor in personalty mortgaged, is the mere equitable right of redemption, by paying the debt. * * * Hence personalty so situated is not subject to sale under execution, and, therefore, not attachable. It follows that the mortgagee of personalty cannot be held as garnishee of the mortgageor while the property is the subject of the mortgage." Drake on Attachment, sect. 539.

The attachment when served had nothing to operate or rest on. And before the equitable interest ripened, if ever, into a mere legal asset or debt, it was mortgaged to the second mortgagee by the unquestioned owner of the equity of redemption.

The only possible answer for the appellant to make to this demonstration and legal conclusion is, that our statute (sect. 2520), provides that the notice of garnishment shall have the effect also to bind in the hands of the garnishee all sums owing by him to the debtor between the time of service and filing his answer. I have always understood the general rule to be, that an attachment, which is, in effect, a proceeding *in rem* must operate upon something *in esse*. It may be *debitum in praesenti, solvendum in futuro ;* but it must exist on an obligation unconditional, and certainly to mature in the future. If the liability of the garnishee at the time of notice, depends on a contingency which may never arise or be performed, such debt is not the subject of garnishment. Drake on Attachments, sect. 551. Waples on Attachment and Garnishment, says: "It must be certain, not depending upon contingency. There must be no condition precedent, no impediment of any sort between the garnishee's liability and the defendant's right to be paid, such as the attaching creditor himself cannot remove." Sect. 97.

At the time of service of notice, Tootle, Hanna & Company owed Carter nothing. Whether they ever would owe him anything depended entirely upon the future contingency as to whether the garnishees would proceed a step further in selling the goods, and if they did, whether there would be one cent of surplus remaining after satisfying their debt and costs of sale. The attaching creditors could not remove this impediment. It would require an equitable proceeding to enforce the duty of the mortgagees.

In *Hearne et al. v. Keith et al.* (63 Mo. 84), the plaintiffs sought to garnish defendants on account of a liability incurred by them as sureties. The court held, that

as the liability of the principal to the surety did not attach until the surety paid the debt of the principal, and as that had not been done when the attachment. issued, the judgment was not sustained. The court say: "The debt for which an attachment may issue must possess an actual character and not be merely possible, and dependent upon a contingency which may never happen. * * * In this state the statute authorizes an attachment in some instances where the debt is not due, yet the provision plainly contemplates that, to warrant the proceeding thereon, there must be an actual, subsisting debt which will become due by the mere efflux of time. When this suit was instituted there was no actual, subsisting debt existing in favor of the plaintiffs, and the consequence is that the judgment must be reversed," etc.

In *Bishop v. Young* (17 Wis. 51), the court say: "Our statute says that the garnishee, from the day of service of the garnishee process, shall stand liable to the plaintiff in the attachment to the amount of property, moneys and credits in his hands, and debts due or to become due from him to the defendant. The property, moneys and credits are such as in the hands of the garnishee, which belong to the principal debtor. And the debts due or to become due evidently relate to such as the garnishee owes absolutely, though payable in the future. We have no idea the statute intended to include in the language, a debt which might possibly become due upon the performance of a contract by the defendant in attachment. * * * There was nothing absolutely due him, the debtor, at the time of service of garnishee process, and whether anything would ever become due depended on a contingency."

II. There is another question presented by this record which renders it, at least, questionable in my mind, whether Tootle, Hanna & Company were subject to this garnishment. The fact appears from the mortgage itself, and other matters, aside from the finding of the trial judge, that at the time the mortgage was made the goods

were in the state of Kansas. The presumption of law would be that this condition continued until the contrary appeared. Were then the garnishees, subject to garnishment for this property situate in another state, to be administered by them under the terms of the trust subject to the laws of that state in force when the contract was made? Such a trust, it is reasonable to assume, was within the contemplation of the parties to the contract to be administered under the jurisdiction of the courts of that state, and be subject to their supervision. Could Tootle, Hanna & Company have removed that property from that jurisdiction to this?

In *Lackland v. Garesche* (56 Mo. *supra*), the court say: "These provisions demonstrate that the rights, credits and effects in the hands of the garnishee are such as are not encumbered with trusts, and such as may be delivered over or paid to the officer under the direction of the court," etc. And in *Sheedy v. Second National Bank* (62 Mo. 25), the court say: "The statute evidently contemplated that, in order to render a person liable as garnishee, the debt which he owed the defendant should be of such a character that upon being served with process he might pay the amount without being compelled to await the determination of a chancery proceeding," etc.

The goods themselves were not within this jurisdiction, and not subject to the process of the Jackson circuit court. There was absolutely nothing to attach here, except the intangible and contingent liability growing out of a surplus fund in the hands of the garnishee yet to arise, and which might never arise.

It does seem to me that this is straining the proceeding by attachment to a dangerous extreme.

The case of *Childs v. Digby* (24 Pa. St.2 3), would seem to warrant this proceeding, in so far as reaching property in the hands of the garnishee beyond the state is concerned. But the soundness of this ruling was questioned, and, I think overruled, in the later case of *Pa. R. R. Co. v. Pennock* (51 Pa. St. 244). The argument and the reason are certainly with the later case. The supreme

court of Kansas, in *Wheat v. R. R. Co.* (4 Kansas 370), approves the decision in *Pa. R. R. v. Pennock, supra.*

We are not called on to determine this question. We are satisfied that on the whole case the circuit court reached a proper conclusion. The other judges concurring, the judgment is affirmed.