357 F.Supp. 662 (1973)
BEAUFORT TRANSFER COMPANY, Plaintiff,
v.
FISCHER TRUCKING COMPANY et al., Defendants.
No. 71 C 38(2).
United States District Court, E. D. Missouri, E. D.
February 21, 1973.
*663 *664 *665 *666 Husch, Eppenberger, Donohue, Elson & Cornfeld, and Fred M. Reichman and William J. Tate, St. Louis, Mo., for plaintiff.
Hall, Reaban Seigel & Hyatt, St. Louis, Mo., J. H. Langworthy, Pacific, Mo., Rufus D. Shannon, Clayton, Mo., Richard O. Funsch, Flynn & Parker, Thompson, Mitchell, Douglas & Neill, St. Louis, Mo., for defendants.

MEMORANDUM OPINION AND ORDER
REGAN, District Judge.
This action of interpleader filed in the Circuit Court of the City of St. Louis was removed by the United States of America. The sum of $32,750 was deposited in the Registry of the Court pursuant to our order of December 9, 1971. Numerous claims against the funds have been asserted, including a claim by plaintiff.
Briefly, the facts giving rise to this action are as follows: On September 8, 1966, Fischer Trucking Company (Fischer) contracted to sell to Beaufort Transfer Company (Beaufort) Fischer's interstate and intrastate common carrier operating rights for the lump sum figure of $33,000, of which $250 was paid on the date of the contract, the balance to be paid within 30 days after the Interstate Commerce Commission (ICC) and the Missouri Public Service Commission approved the transfer of the rights. On the same date a "Letter of Disbursement," to be adverted to later, was executed by Fischer.
On September 20, 1966, another contract was entered into by Fischer, this one with Philipp Transit Lines, Inc. (Philipp), whereby Fischer purported to sell to Philipp the identical operating rights for the sum of $40,000. As the result of Fischer's refusal to abide by its September 8 contract, Beaufort sought and obtained a decree of specific performance. On February 9, 1970, the Supreme Court of Missouri affirmed the trial court's decree. Beaufort Transfer Co. v. Fischer Trucking Co., Mo., 451 S. W.2d 40.
After the mandate of the Missouri Supreme Court was filed in the court below, applications for the transfer of the operating rights were prosecuted before the respective commissions. The ICC approved the transfer of the interstate rights by an order served on November 16, 1970, the order to become effective December 21, 1970 (35 days after the service date). This suit was filed December 11, 1970, although Beaufort had not yet succeeded in obtaining the necessary approval of the Missouri Public Service Commission for the transfer of the intrastate rights. Even as late as the date this case was tried, such rights had not been obtained.
We first consider whether any of the claimants obtained a lien on the purchase price indebtedness or a right against Beaufort by virtue of garnishment. In ruling this issue we reject the contention of the United States that the service of a writ of garnishment in aid of execution would not suffice to create a lien upon an indebtedness owing to a judgment debtor. Vittert Const. & Inv. Co. v. Wall Covering Contr., Inc., Mo.App., 473 S.W.2d 799; Dugan v. Missouri Neon & Plastic Advertising Company, 8 Cir., 472 F.2d 944, decided February 6, 1973.
Claims purporting to be based on execution and garnishment in aid thereof are asserted by the following claimants: The Division of Employment Security for the State of Missouri, Driscoll Insurance Agency Company, Inc., Purcell-Ellis Tire Company, Acme Fast Freight, Inc., Yellow Freight Systems, Inc., Ryder Trucklines, Inc., Norwalk Truck Lines, Navajo Freight Lines, Inc., and Wilson Freight Company.
*667 Under Missouri law (Missouri Supreme Court Rule 90.02, V.A.M.R.; Section 525.040 R.S.Mo.), notice of garnishment has the effect of attaching all money, rights, credits, or other choses in action of the judgment defendant in the garnishee's possession or charge or under his control at any time between the service of the garnishment and the time of filing the garnishee's answer. The Missouri authorities make it abundantly clear, however, that a debt which is conditional or dependent for its existence upon some contingency is not a subject of garnishment. Raithel v. Hamilton-Schmidt Surgical Co., Mo.App., 48 S.W. 2d 79, 81, 82; Beckham v. Tootle, Hanna & Co., 19 Mo.App. 596, 604; Zeltman v. Commercial Bank, 67 Mo.App. 672, 677; State ex rel. Government Employees Insurance Co., Mo.App., 454 S. W.2d 942, 950.
In view of the foregoing, it is necessary to ascertain the precise date Beaufort became unconditionally obligated to pay the purchase price for the operating rights. The contract of September 8, 1966, expressly provides that the purchase is conditioned upon the rights being transferred by the ICC and the Missouri Public Service Commission to Beaufort without restriction and that the $32,750 balance of the purchase price shall be paid 30 days after the operating rights have been "finally transferred." The decree of specific performance directs Fischer to perform the contract by accepting the purchase price, conditioned upon the motor carrier operating rights being transferred by the ICC and the Missouri Public Service Commission. Obviously, unless the regulatory bodies authorized the transfer of the rights, Beaufort was in no event obligated to pay the purchase price. Prior to the approval of the transfers, the indebtedness was conditional and contingent.
The ICC approved the transfer of the interstate rights by an order served November 16, 1970, to be effective December 21, 1970. It is, however, unnecessary to definitively decide whether the condition or contingency as to the interstate rights was removed as of November 16, the service date, or December 21, the effective date of the order, for the reason that the "purchase" and the payment of the purchase price were conditioned upon the transfer to Beaufort of both the intrastate and the interstate rights. Beaufort was not required to accept the transfer of one of the rights unless the other was also transferred, so that until both rights were transferred the indebtedness remained conditional and contingent.[1]
By filing this interpleader suit on December 11, 1970, Beaufort waived the condition as to the approval of the transfer by the Missouri Public Service Commission, accepted the approved transfer of the interstate right as full compliance by Fischer, and thereby at that time conceded its liability for the full purchase price. In these circumstances we hold that as of December 11, 1970, Beaufort's contractual and court-ordered indebtedness to Fischer was for the first time no longer conditional or contingent, and was then owing, but not yet due (because the 30 day period had not elapsed). In light of the foregoing determination, we consider the claims based on execution and garnishment.
The Division of Employment Security filed Certificates of Assessment *668 against Fischer on November 17, 1966, July 27, 1966 and December 23, 1966. The filing of such certificates has the effect of a judgment of the Circuit Court where filed. Section 288.170, R. S.Mo. Executions and garnishments in aid thereof were issued on each judgment naming Beaufort as garnishee. Answers to interrogatories were duly filed by Beaufort in each proceeding, the last such answer being filed April 30, 1970. Inasmuch as the indebtedness of Beaufort to Fischer was not in existence as an unconditional obligation on April 30, it follows that the Division of Employment Security obtained no lien on the debt and that its status was simply that of a judgment creditor.
Driscoll Insurance Agency, Inc. obtained a judgment against Fischer on October 4, 1966. On March 10, 1970 execution thereon was issued returnable May 12, 1970, Beaufort being summoned as garnishee. Interrogatories were filed on April 20, 1970 and answered by Beaufort on May 5, 1970. No unconditional debt being owed by Beaufort on May 5, 1970, Driscoll obtained no lien on the debt and occupied the status of a simple judgment creditor.
Purcell-Ellis Tire Company obtained a judgment against Fischer on July 5, 1966. An execution was issued on March 9, 1970, returnable April 10, 1970. The sheriff's return on the execution indicates service was had by handing a copy of the "Summons to the Garnishee" to the agent in charge of Beaufort. No showing is made that garnishment proceedings were in fact instituted or prosecuted. We cannot speculate with respect to this fact. Inasmuch as the return date was April 10, 1970, it was the duty of the garnishor (assuming that a garnishment had in fact been issued) to file interrogatories not later than six days after the return date. (Missouri Supreme Court Rule 90.12; Section 525.130, R.S.Mo.). There is no contention that any such interrogatories were filed then or thereafter. The failure to timely file interrogatories had the effect of abandoning the garnishment (assuming there was a garnishment proceeding). Dunham v. Jerome, 226 Mo. App. 1214, 49 S.W.2d 637. Purcell-Ellis has no lien on the indebtedness.
Acme Fast Freight, Inc. obtained a magistrate court judgment against Fischer. A transcript of this judgment was filed in the Circuit Court of St. Louis County. On August 28, 1970, execution and garnishment in aid thereof, naming Beaufort as garnishee, were issued, returnable November 27, 1970. Interrogatories were filed November 27, 1970 and were answered by Beaufort on December 8, 1970. Acme's claim is based on the premise that Beaufort's indebtedness arose on November 16, 1970, the date the Interstate Commerce Commission order was served. We have held to the contrary, not because the debt was not then due, but for the reason that Beaufort's obligation was then, and until at least December 11, 1970, contingent and conditional. Since the indebtedness was not subject to garnishment on December 8, 1970, when the interrogatories were answered, the claim of Acme Fast Freight, Inc. must also fail.
Yellow Freight Systems, Inc., after obtaining judgment, instituted garnishment proceedings in the Magistrate Court of St. Louis County. The transcript of the proceedings discloses that the answer of garnishee to the interrogatories was filed June 2, 1970, long before an unconditional indebtedness became owing to Fischer. Yellow's claim necessarily must fail.
Ryder Trucklines, Inc., Norwalk Truck Lines, Inc., Navajo Freight Lines, Inc., and Wilson Freight Company each obtained magistrate court judgments, transcripts of which were subsequently filed in the Circuit Court. We glean from the transcripts of the court proceedings that several garnishment proceedings were instituted by each judgment creditor, with the last such being returnable October 28, 1970. The transcripts are silent as to whether or *669 when interrogatories were filed in those garnishments and whether or when, if so, the garnishee filed answers thereto.[2] Claimants failed to sustain their burden of making a prima facie showing that the garnishments were still effective when Beaufort's indebtedness became unconditional.[3]
The liens claimed by the United States of America and Philipp Transit Lines, Inc., respectively, involve other considerations. The claim of the United States of America is based on assessments against Fischer for unpaid withholding, employment and highway use taxes. Notices of the tax liens were duly filed in Franklin County (Fischer's principal place of business) on various dates beginning September 8, 1966 and ending February 5, 1969. Other notices of tax liens were filed in St. Louis County, Missouri, on July 1, 1971. Notices of levy were served on Beaufort on April 16, 1968 and April 16, 1970. The parties have stipulated that the agreegate of the taxes owing by Fischer is $13,707.48 plus accrued interest at 6% per annum.
Section 6321, 26 U.S.C. provides for a lien for unpaid taxes on all property and rights to property belonging to the person liable for the tax. That motor carrier operating rights, particularly interstate rights, are property is well settled. See Friederich v. Dockery, 8 Cir., 209 F.2d 677 and In re Rainbo Express, Inc., 7 Cir., 179 F.2d 1. Hence, the lien of the United States attached to the operating rights, subject to any valid prior security interest therein.
Claimant Philipp Transit Line, Inc. is the transferee of a note executed by Fischer under date of January 4, 1966, secured by a chattel mortgage of the same date on Fischer's operating rights as well as other property. The payee of the note, Fischer Transfer Company, duly recorded the chattel mortgage under the then applicable Missouri law.
Philipp purchased the note and mortgage on November 19, 1969. Still due on the note is $6,848.56 and interest at 4% per annum from December 1, 1968.[4] The chattel mortgage operated to confer a lien on the operating rights in favor of the holder thereof. In re Rainbo Express, Inc., 7 Cir., 179 F.2d 1. By virtue of Section 6323(a) and (h)(1), 26 U.S.C., the lien of the chattel mortgage is prior to the later created tax lien of the United States of America.
Under the totality of the circumstances here involved, the liens of both Philipp and the United States of America attached to the proceeds of the sale of the rights.[5] Were this not so, the ICC right which Beaufort acquired would be *670 encumbered with both the security interest of Philipp and the tax liens of the Government. It was in recognition of this fact that the contract of September 8, 1966 provided that should there be any tax liens or mortgages on the operating rights all such encumbrances "shall be removed prior to the consummation of this purchase as herein provided."
It is clearly to be inferred from the Letter of Disbursement that the parties contemplated that Fischer, whose obligation it was to remove the liens, would be financially unable to do so, so that Beaufort was thereby authorized to discharge these liens out of the purchase price. Whether the Letter of Disbursement constituted a contract obligating Beaufort to pay the amount of the liens in partial satisfaction of the sale price is not the real issue. What is important is that Fischer not only authorized such payments by Beaufort but even now urges that out of the monies due it from the deposit there be paid the amount of Philipp's security lien and the Government's tax liens. And the decree of specific performance, taking note thereof, directed Fischer to accept the sum of $32,750, "less any and all sums paid by Beaufort Transfer Company pursuant to the disbursement letter." In this situation, neither Philipp nor the United States is an adverse claimant insofar as Fischer's interest in the final disposition of the fund is concerned.
In view of the fact that the aggregate of the lien claims of Philipp and the United States are substantially less than the amount of the purchase price which Beaufort deposited, there would be no present problem resulting from the multiplicity of the other claims (which we have disallowed) but for the claim of Beaufort itself to substantial attorneys' fees. The contract of September 8, 1966 provides that the "Buyer and Seller hereby assume and agree to pay equally half-and-half all fees and expenses in connection with the transfer of the motor carry (sic) operating rights of Seller to Buyer, and under the Certificate of Public Convenience and Necessity, to be transferred between the Buyer and Seller, under the terms of this contract." Relying on this provision, Beaufort claims entitlement to one-half of $9,779.60 (the aggregate legal fees and expenses incurred by it in connection with the transfer of the ICC permit and the so far unsuccessful effort to obtain the Missouri rights), as well as one-half of $14,813.24 (the expenses which were incurred in connection with the suit for specific performance).
We have no doubt that the parties, knowledgeable as they were of the procedures of the regulatory bodies and the legal intricacies involved in obtaining transfers of operating rights, were aware that expert services would be essential for the purpose of seeking (and hopefully obtaining) the approval of the agencies for the transfers and that the provision of the contract relating to the division of the cost of such services was entered into with that fact in mind. We agree that Beaufort is entitled to one-half of the fees and expenses it incurred in prosecuting the application for the transfer of the ICC operating rights, and also (although the matter is not entirely free from doubt) to the fees and expenses incurred in unsuccessfully attempting to obtain the Missouri rights. Hence, the purchase price was subject to a set-off of $4,889.80.
However, neither party anticipated on September 8, 1966, that Fischer would attempt to avoid its obligation under the contract. In our judgment, the expenses incurred in connection with the suit for specific performance were not within the contemplation of the parties, and we do not believe that the contract can reasonably be construed to justify the payment to Beaufort of one-half of those expenses as distinguished from the expenses directly incurred in the efforts to obtain the approval of the transfers of the operating rights. Beaufort is not entitled to recover any portion of its specific performance expenses.
Philipp has filed a cross-claim seeking a personal judgment against Fischer *671 based on moneys loaned in the aggregate sum of $8000. The loans were made to Fischer during the pendency of the suit for specific performance in order to enable Fischer to make the monthly payments due Fischer Transfer Company, the then holder of the note secured by the chattel mortgage. Philipp was a party to the suit and no doubt intended to apply the loan indebtedness on the purchase price of the rights if Fischer and Philipp prevailed.
In general, interpleader jurisdiction is limited to the fund in controversy. Cf. Northern Natural Gas Co. v. Grounds, 10 Cir., 441 F.2d 704, 715. To the extent that a cross-claim is permissible under federal or Missouri law, it must arise out of the transaction that is the subject matter of the action or relate to the property that is the subject matter of the action. Philipp's asserted cross-claim fits neither category.[6] True, Fischer does not object to the cross-claim, but since we have no independent (e. g. diversity) jurisdiction as to the cross-claim, we decline to exercise questionable pendent jurisdiction over it.
Finally, Beaufort requests attorneys' fees and expenses for bringing this interpleader. Faced with a multiplicity of claims to portions of the fund and vexed with a number of garnishment proceedings, some pending and others threatened, Beaufort was, of course, justified in bringing the claimants into one forum. Nevertheless, it was not a mere disinterested stakeholder, in that in its petition for an order of interpleader it claimed entitlement to $10,127.09 out of the fund. Beaufort's claim as filed in this proceeding was increased to $12,796.42, some 39 per cent of the fund deposited.
"Costs and attorney's fees frequently are denied when the stakeholder claims an interest in the disputed fund . . .". Wright and Miller, Federal Practice and Procedure, § 1719, page 483. Cf. Standard Surety & Casualty Co. v. Baker, 8 Cir., 105 F.2d 578, 580; Continental Casualty Co. v. Associated Pipe & Supply Co., D.C.La., 310 F.Supp. 1207, 1214.
The attorneys' fees sought by Beaufort are in the sum of $4,057.50 for 121 hours of legal service in the preparation and prosecution of this action. In addition, it seeks reimbursement for cash outlays by its attorneys in the amount of $277.75. We have not been apprised of any reason why such substantial legal expenses should have been incurred in this relatively simple, uncomplicated, and essentially uncontested interpleader. That the legal services may have been performed in the period prior to our order sustaining the petition for interpleader does not mean that the services were performed for that purpose. It would appear that much time was spent in the preparation of the stipulation of facts, but these facts basically relate to the merits of the respective claims, as distinguished from the mere existence of conflicting claims, a fact which was not in controversy. The delay in obtaining the order of interpleader could not reasonably be said to have been due to resistance to such an order nor to have resulted in Beaufort's incurring any appreciable additional legal expenses.
In our view, Beaufort obtained a large benefit from the order of interpleader, in that it has been enabled to have its own contractual claim adjudicated as well as being discharged from all liability for the numerous judgment creditor garnishment claims which it had theretofore been compelled to defend. And, comparably to Continental Casualty Co. v. Associated Pipe & Supply Co., supra, Beaufort has had the use and benefit of the $32,750 fund for the year from December 11, 1970, when the action was filed, to December 16, 1971, when the fund was paid into the registry of the court. In these circumstances, and bearing in mind that Beaufort is not a disinterested stakeholder, *672 we have determined in the exercise of our discretion that an award of attorneys' fees and expenses would not be appropriate.
The foregoing memorandum constitutes our findings of fact and conclusions of law.
The Clerk is directed to enter judgment in accordance herewith, awarding claimant Philipp Transit Lines, Inc., out of the fund deposited, the sum of $6,848.56 plus interest thereon at 4% per annum from December 1, 1968 in the present amount of $1,158.54, awarding claimant United States of America, out of the fund deposited, the sum of $13,707.48 plus interest at 6% per annum accrued on the assessments in the present amount of $5,262.45, awarding claimant Beaufort Transfer Company, out of the fund deposited, the sum of $4,889.80, awarding the balance of the fund deposited to Fischer Trucking Company, disallowing all other claims to the fund, and dismissing the cross-claim of Philipp Transit Lines, Inc. without prejudice.
NOTES
[1] We are aware that under Missouri law, a debt may be attached although it is not yet due. Missouri Supreme Court Rule 90.25; Section 525.260 R.S.Mo. The question here, however, is not whether the indebtedness was due (e. g., 30 days after the transfer of both rights) but whether the liability was contingent (e. g., upon the approval of regulatory bodies). "In this State the statute authorizes an attachment in some instances, where the debt is not due, yet the provision plainly contemplates that to warrant the proceeding, there must be an actual subsisting debt, which will become due by the efflux of time." State ex rel. Government Employees Insurance Co., Mo.App., 454 S.W.2d 942 at 950, quoting from Hearne v. Keath, 63 Mo. 84, 89.
[2] Claimants allege that interrogatories were filed, but presented no proof thereof. Of importance, there is no allegation whatever respecting garnishee's answers, if any, and the date thereof.
[3] A claim has also been lodged on behalf of a proposed intervenor, Trailmobile, Inc. This claim is based solely on a judgment. A judgment creates no lien on the personal property of the debtor "until an execution has been issued and levied. [Missouri] Supreme Court Rule 76.17." United States v. Plez Lewis & Son, Inc., D.C.Mo., 272 F.Supp. 221, 223-224. It follows that the claim is lacking in merit, and intervention will be denied.
[4] Philipp also asks for attorneys' fees. The note provides that if it is not paid when due, Fischer "agrees to pay all cost of collection including attorney's fees." However, we find nothing in the papers filed which gives Philipp a lien for such "costs of collection," nor is there any evidence with respect to any such "costs" or the amount thereof.
[5] Beaufort expressly so concedes as to Philipp's lien and the United States of America impliedly agrees. A further support for the asserted tax liens of the United States on the proceeds of the sale is found in the fact that when the purchase price indebtedness was no longer conditional or contingent as of December 11, 1970, such indebtedness was then "property" of Fischer and hence covered by the tax liens under Section 6321. Glass City Bank v. United States, 326 U.S. 265, 66 S.Ct. 108, 90 L.Ed. 56; Home Insurance Co. v. B. B. Rider Corp., D.C.N.J., 212 F.Supp. 457.
[6] That Philipp seeks to have the judgment on the cross-claim paid out of Fischer's interest in the fund does not affect the fact that the cross-claim itself is not related to the fund.