**JEFFERSON STANDARD INSURANCE COMPANY, Plaintiff,**

v.

**Elsie Andrews CRAVEN et al., Defendants.**

**Civ. No. 72–491.**

United States District Court, M. D. Pennsylvania.

Nov. 1, 1973.

Richard H. Wix, Wix & Wenger, Harrisburg, Pa., for claimant Elsie Andrews Craven.

Robert J. Stewart, Liverant, Senft & Cohen, York, Pa., for defendants David Clifton Blain Craven and Robert Brent Craven.

## MEMORANDUM AND ORDER

HERMAN, District Judge.

This is an interpleader action [1] which requires resolution of two unsettled areas of the law:

    (1) Whether a claimant to an impleader fund may demand a jury

---

1. The complaint is based on Rule 22 and statutory interpleader pursuant to 28 U.S.C. § 1335.

trial in a dispute between defendants which does not involve the stakeholder, and;

(2) Whether there exists an absolute prohibition on an interpleader cross-claim which does not directly involve the interpleader fund.

The Jefferson Standard Insurance Company paid $36,799 into the registry of the court, being the total liability on five life insurance policies on the life of the late Clifton A. Craven. The insurance company named Elsie A. Craven, the widow, and her sons David and Robert as nominal defendants.

Once the issue was joined Jefferson Standard moved for summary judgment against the defendants. The court determined that no dispute existed as to the amount of Jefferson Standard's liability; granted summary judgment to Jefferson Standard and retained the fund less $1,615.73 to Jefferson for costs and counsel fees. Mrs. Craven and her two sons, David Clifton Blain Craven and Robert Brent Craven are embroiled in a dispute as to who has rightful claim on the proceeds.

In actuality Mrs. Craven is the true plaintiff, asserting that her adult sons wrongfully induced their late father to eliminate their mother as beneficiary, placing them in her stead. In addition, Mrs. Craven has cross-claimed seeking $13,000 from her son Robert on a similar charge arising out of a Civil Service insurance policy.

The details of the dispute are not here relevant. Suffice it to say that Mr. Craven changed the beneficiaries during a period when he was allegedly terminally ill and lacking the necessary mental ability to change the beneficiaries. Any factual matters regarding undue influence or the mental state of Mr. Craven must await a later determination. However, the question as to who shall be the fact finder is now at issue. Mrs. Craven has demanded a jury trial on the issue of her sons' alleged undue influence. The two sons have moved to strike the demand for a jury trial. They have further moved to strike the cross-claim covering the Civil Service policy.

## A. JURY TRIAL

■ As noted, the court has discharged the interpleading insurance company from further liability, leaving only the ownership of the proceeds at issue.

This court views the jury trial issue in the spirit of Dimick v. Schiedt, 293 U.S. 474, 486, 55 S.Ct. 296, 301, 79 L.Ed. 603 (1935) wherein the court wrote:

"Maintenance of the jury as a fact-finding body is of such importance and occupies so firm a place in our history and jurisprudence that any seeming curtailment of the right to a jury trial should be scrutinized with the utmost care."

The sons argue that interpleader is for all purposes an equitable action. In other words, once an interpleader always an interpleader. It seems unquestionable that the matter of whether the initial interpleading is to be permitted is an equitable inquiry for the court. This court has already studied that segment of the case and disposed of it. The second stage involves the resolution of disputes amongst possible claimants to the fund now held by the Clerk of Courts. 3A Moore, Federal Practice § 22.14 [4] at 3113. 7 Wright & Miller, Federal Practice and Procedure § 1718, at 469.

Early decisions, mostly in dictum, gave support to the notion that the *entire* interpleader action was committed to the equity courts. *See, e. g.,* dicta in Liberty Oil Co. v. Condon Nat'l Bank, 260 U.S. 235, 43 S.Ct. 118, 67 L.Ed. 232 (1922). Such a construction has been altered sufficiently so that a jury trial is a matter of right where there is a dispute over the liability of the stakeholder. Moore, *supra,* at 3114. Here, however, the stakeholder's liability was not at issue and Jefferson Standard was consequently removed from the case. The status of a jury trial is unsettled in the

gray area of disputes between interpleader claimants.

The two sons have taken the position that there is no constitutional requirement mandating a jury for Mrs. Craven's claim. Instead, they argue the matter to be discretionary with the court. The sons urge the court to strike the demand for a jury trial on the ground that they would be irreparably harmed by sympathy which assertedly will flow toward the mother. As the sons see it, the sympathy which they fear, would transform a jury trial into an inadequate remedy at law. We cannot agree.

Were this court to interpose itself between a claimant and a jury trial purely because of possible sympathy toward one party, we would be engaging in the most dubious speculation striking at the very heart of trial by jury. A plaintiff's case, based only on emotion, can be guarded against without denying a party access to a jury. The sons' argument that Mrs. Craven has a weak case built on sympathy is better left to motions for a directed verdict or judgment n. o. v. for insufficient evidence, assuming them to be appropriate.

In 3A Moore, Federal Practice § 22.14 [4], at 3114–15 the author concluded:

"Most recently, a heightened appreciation of the function of the Federal Rules and of the significance of the constitutional right to jury trial has convinced more courts that a claimant should not be deprived of that right on such issues as would have been properly triable by jury had the claimant asserted his rights against the stakeholder in an ordinary civil proceeding. . . . In the light of legal history, it would be anomalous to hold that a necessary concomitant of such procedural reform—reform which has remedied the very causes for withdrawal of interpleader, histor-

ically, from the law courts—is a sacrifice of the right to a jury determination of issues which are fit for resolution by a jury. . . .

"Quite apart from history, statutory and Rule interpleader should be viewed primarily and simply as devices for the joinder of parties and claims which justice and judicial economy demand be tried together. This should work no sacrifice of a jury right available were the causes to be tried separately."

Cf. 5 Couch on Insurance 2d § 28:105; 18 Couch on Insurance 2d § 74:253; Beacon Theatres, Inc. v. Westover, 359 U.S. 500, 79 S.Ct. 948, 3 L.Ed.2d 988 (1959).

This court is of the view that the motion to strike the demand for a jury trial should be denied.

## B. CROSS–CLAIM

In addition to claiming the proceeds from the five Jefferson Standard policies, Mrs. Craven has filed a cross-claim for the proceeds of a $13,000 Civil Service Commission insurance policy. Robert Brent Craven is the defendant in the cross-claim which charges that he wrongfully influenced his father to make him that policy's beneficiary. The $13,000 at issue has already been paid to the son.[2]

The motion to strike the cross-claim is grounded squarely upon the assertion that a valid cross-claim must involve a dispute over the interpleader fund. The fund itself marks the "outer limits of the controversy" according to the defendant Robert Craven. The defendant urges the applicability of Northern Natural Gas Co. v. Grounds, 292 F.Supp. 619 (D.Kan.), rev'd in part, aff'd in part, 441 F.2d 704 (10th Cir.), cert. denied, 404 U.S. 951, 92 S.Ct. 268, 30 L. Ed.2d 267 (1971), rehearing denied, 404

2. It bears note that the substance of the cross-claim would satisfy federal jurisdictional requirements in that there is diversity of citizenship between Mrs. Craven and Robert Craven and the sum in controversy exceeds $10,000.00.

U.S. 1065, 92 S.Ct. 732, 30 L.Ed.2d 754 (1972).

The Northern Gas decisions did indeed flatly conclude that:

"In interpleader actions, however, the 'subject matter of the action' is not a set of facts, a transaction or other occurrence which gives rise to litigation, but a specific identified fund or property. Claims must not only 'relate' to that property, but be asserted against it . . . ." 292 F.Supp., at 640.

Both the district and circuit decisions cited State Farm Fire & Casualty Co. v. Tashire, 386 U.S. 523, 87 S.Ct. 1199, 18 L.Ed.2d 270 (1967) as authority for the proposition that a cross-claim must be asserted against the interpleader fund. The Tashire case involved a mass tort in which a bus and truck collided. Nearly three dozen persons were injured. Four of the injured filed suit for damages in excess of $1,000,000. The insurance carrier for the truck driver asserted it had a maximum liability of $20,000. The insurance company interplead the $20,000 seeking an injunction requiring all claims against the driver to be asserted in one suit. In the alternative the company claimed the driver violated a provision of the policy freeing the carrier from any duty, and it therefore sought return of the $20,000.

As a result of motions by several parties the district court enjoined prosecution of lawsuits by anyone except in the interpleader forum. The circuit reversed on grounds not here relevant. The Supreme Court reversed the circuit ruling and modified the district court order. The Supreme Court concluded:

"The fact that State Farm had properly invoked the interpleader jurisdiction under § 1335 did not, however, entitle it to an order both enjoining prosecution of suits against it outside the confines of the interpleader proceeding and also extending such protection to its insured, the alleged tortfeasor. . . . Here, the scope of the litigation, in terms of parties and claims, was vastly more extensive than the confines of the 'fund,' the deposited proceeds of the insurance policy. In these circumstances, the mere existence of such a fund cannot, by use of interpleader, be employed to accomplish purposes that exceed the needs of orderly contest with respect to the fund.

"There are situations, of a type not present here, where the effect of the interpleader is to confine the total litigation to a single forum and proceeding. One such case is where a stakeholder, faced with rival claims to the fund itself, acknowledges—or denies—his liability to one or the other of the claimants. In this situation, the fund itself is the target of the claimants. It marks the outer limits of the controversy. . . ." 386 U.S., at 533–534, 87 S.Ct. at 1205.

It is submitted that nothing in the facts or language of Tashire justifies the per se rule as construed in Natural Gas Co. v. Grounds, *supra*. First, Tashire in no way involved a cross-claim. Second, the court expressly notes that "situations, of a type not present" in Tashire might justify confining interpleader to a strict definition. Third, the court illustrated the "outer limits" with an example wholly irrelevant to the instant case. The plaintiff-interpleader (Jefferson Standard) took no position on the validity of the defendants' various claims.

This court is of the opinion that Tashire stands for the proposition that an interpleader action cannot be used to freeze the rights of parties who have causes of action not related to the interpleader fund or which are in excess thereof.[3] *See, e. g.* National Surety

3. Moreover, the courts in Natural Gas v. Grounds also relied upon two inapposite cases, Knoll v. Socony Mobil Oil Co., 369 F.2d 425 (10th Cir.), cert. denied, 386 U.S. 977, 87 S.Ct. 1173, 18 L.Ed.2d 138 (1968), and Erie Bank v. United States District Court for the District of Colorado, 362 F.2d 539 (10th Cir. 1966). Each of the cases involved counterclaims filed against the interpleader plaintiff. Both counterclaims were

Corp. v. Globe Indemnity Co., 331 F. Supp. 208, 210 (E.D.Pa.1971). It would be unrealistic to construe such a holding to be a per se bar to any cross-claim simply because the corpus of the cross-claim was not the impleaded fund. In Beaufort Transfer Co. v. Fischer Trucking Co., 357 F.Supp. 662, 671 (E.D.Mo. 1973) the court, citing Grounds, realistically concluded:

> "*In general,* interpleader jurisdiction is limited to the fund in controversy. . . . To the extent that a cross-claim is permissible under federal . . . law, *it must arise out of the transaction that is the subject matter of the action* or relate to the property that is the subject matter of the action. . . ." (Emphasis added)

The "transaction" test referred to in Beaufort is merely adopted from Rule 13(g), Federal Rules of Civil Procedure, governing permissive cross-claims. Such a position is taken in 3A Moore, Federal Practice § 22.15, at 3134:

> "[T]he purpose of both the statute and the Rules could be furthered by permitting the federal court to adjudicate cross-claims which are intimately related to the subject matter of the interpleader dispute and which will not unfairly surprise or unduly prejudice the cross-defendant. . . ."

In substantial agreement is 7 Wright & Miller, Federal Practice and Procedure § 1715, at 449–50:

> "When interpleader is brought under Rule 22, process will have been served on all the claimants within the usual limits prescribed by the federal rules and there is no difficulty in allowing the claimants to assert cross-claims against each other, as in any other civil action, assuming, of course, the requirements of Rule 13(g) are

dismissed because the stakeholder was not an "opposing party" within the meaning of Rule 13, Federal Rules of Civil Procedure.

met. Normally, the addition of a cross-claim will not pose any difficulties or unduly complicate the action because Rule 13(g) requires the claim to arise out of the transaction or occurrence or relate to the property that is the subject matter of the original interpleader action. The cross-claim will be considered ancillary for subject matter jurisdiction purposes. Should anyone feel prejudiced by the interjection of the cross-claim, relief can be sought by a motion under Rule 42(b) for separate trials. Dismissal, however, would be improper."

Wright & Miller arrive at essentially the same result with statutory interpleader. The instant case was filed pursuant to both rule and statute.

■ This court is therefore of the opinion that Mrs. Craven is not prohibited as a matter of law from asserting a cross-claim solely because it does not involve the interpleader fund.

Having so concluded, the court now directs its attention to whether Mrs. Craven's cross-claim satisfies Rule 13(g), Federal Rules of Civil Procedure. Rule 13(g) permits a cross-claim "by one party against a co-party arising out of the transaction or occurrence that is the subject matter either of the original action or of a counterclaim therein . . . ."

■ The basis for determining the propriety of a cross-claim was set down in Benson Mfg. Co. v. Bell Telephone Co. of Pa., 35 F.R.D. 29, 33–34 (E.D.Pa. 1964):

> "The controlling element in the assertion of a cross-claim is that it arises out of the same transaction or occurrence that is the subject matter. The test used in determining the meaning of the same transaction or occurrence should be the same test applicable to Rule 13(a) of the Federal Rules of Civil Procedure, Compulsory Counter-

This court views neither case as authority for the cross-claim issue in the instant case.

claims; 1A Barron & Holtzoff—Federal Practice and Procedure § 397, ftn. 292.

"The logical relationship principle was adopted by Chief Judge Biggs as to the meaning of the same transaction or occurrence in Great Lakes Rubber Corporation v. Herbert Cooper Co., Inc., 286 F.2d 631, 634 (3d Cir. 1961). There the Court stated:

'We have indicated that a counterclaim is compulsory if it bears a "logical relationship" to an opposing party's claim. Zion v. Sentry Safety Control Corp., 3 Cir., 1958, 258 F.2d 31. See also United Artists Corp. v. Masterpiece Productions, Inc., 2 Cir., 1955, 221 F.2d 213, 216. The phrase "logical relationship" is given meaning by the purpose of the rule which it was designed to implement. Thus, a counterclaim is logically related to the opposing party's claim where separate trials on each of their respective claims would involve a substantial duplication of effort and time by the parties and the courts. Where multiple claims involve many of the same factual issues, or the same factual and legal issues, or where they are offshoots of the same basic controversy between the parties, fairness and considerations of convenience and of economy require that the counterclaimant be permitted to maintain his cause of action. * * *' "

*See also* Old Homestead Bread Co. v. Continental Baking Co., 47 F.R.D. 560, 563 n. 2 (D.Colo.1969).

█ The instant case involves five impleaded policies from a single carrier and one from a government agency. The pleadings reveal that the deceased changed the beneficiary on all six policies at the same point in time. The reason for the beneficiary changes in all six policies, according to Mrs. Craven, was the wrongful undue influence exerted by her sons and the insured's allegedly deficient state of mind. Moreover, the par-

ties in the original claim are identical to the parties in the proposed cross-claim. This court concludes that the transactions involved are of an almost inseparable nature. To require a separate trial for one of the six policy disputes would be wholly unrealistic.

An appropriate order will be entered.